**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VOTEVETS ACTION FUND<br>2201 Wisconsin Ave. NW, #320<br>Washington, DC  20007,<br><br>       *Plaintiff*,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>     VETERANS AFFAIRS<br>810 Vermont Ave. NW<br>Washington, DC  20420; and<br><br>ROBERT WILKIE, in his official capacity as<br>     Secretary of the United States<br>     Department of Veterans Affairs,<br>810 Vermont Ave. NW<br>Washington, DC  20420,<br><br>       *Defendants.* | No. 18-cv-1925 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff VoteVets Action Fund ("VoteVets") hereby sues Defendants the United States Department of Veterans Affairs (the "Department" or the "VA") and Robert Wilkie, in his official capacity as the Secretary of the VA, and alleges as follows:

1.     President Trump and his Administration have made a practice of outsourcing decisionmaking on key issues of policy and government administration to private individuals, especially those who have business or social relationships with the President. These individuals have influenced, shaped, and dictated personnel and policy decisions made by the Administration. They have done so without being subjected to transparency requirements, conflict-of-interest screens, and other accountability rules required of public servants.

2.      In this case, the influential individuals are members of President Trump's social club, Mar-a-Lago; the usurped authority belongs to the United States Department of Veterans Affairs; and the victims are America's veterans. Since January 2017, the Department has repeatedly sought the advice of, and acted on the basis of collective recommendations from, Ike Perlmutter, Bruce Moskowitz, and Marc Sherman. These members of the "Mar-a-Lago Council" (or the "Council") are part of this prominent and powerful advisory committee not because of any particular expertise or relevant experience. They have none—no government experience, no U.S. military experience. Rather, each simply shares a financial relationship with President Trump as a dues-paying member of the Mar-a-Lago Club, a private golf and social club in Palm Beach, Florida, owned by the Trump Organization.

3.      Since its inception, the Mar-a-Lago Council has operated in secret. The Trump Administration made no public announcement upon the Council's creation, and despite the Council's extensive activities—including more than twenty meetings—the Administration has failed to inform the public about the activities of a group empowered to make recommendations affecting the lives of millions of veterans.

4.      While the full extent of the Mar-a-Lago Council's work remains hidden, the scope of its influence is now coming into view. Through frequent phone calls and meetings with top officials at the Department, including private meetings held inside the Mar-a-Lago Club, the Council's views are solicited and its advice followed on a broad range of policy and personnel matters concerning veterans. This is particularly true with respect to the makeup of the VA's senior leadership. Upon the recommendation of the Mar-a-Lago Council, the VA has already made substantial changes to senior leadership posts, including the Secretary.

5.      In addition to affecting personnel changes at prominent positions within the Department's leadership, the Mar-a-Lago Council has also advised the Department on, among other matters, building a national medical device registry at the VA, initiatives to prevent veteran suicide, the process for evaluating VA surgery programs, transforming the VA's digital records system, and privatizing the healthcare services currently provided by the VA.

6.      The Mar-a-Lago Council has admitted that it serves as an advisory committee for the VA. The Council has boasted about its role, even. In a statement that they issued jointly, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman said that they, together, "saw an opportunity to assist the Department of Veterans Affairs's leadership," and that they, together, "offered [their] counsel . . . to assist the President, Secretary, and VA leadership in . . . making the essential decisions . . . that affect our nation's veterans." "At all times," they said, they "offered [their] help and advice on a voluntary basis." They "were on emails and conference calls with senior staff, and [then-]Secretary Shulkin referred on numerous occasions to his discussions with outside experts," including, presumably, them. They "discuss[ed] healthcare delivery and healthcare quality challenges facing the agency" and "were always willing to share [their] thoughts." Indeed, they "provided [their] advice and suggestions so that members of the Administration could consider [their suggestions] . . . to make [the Administration's] own decisions on actions to be taken."[1]

7.      According to their joint statement, the Mar-a-Lago Council is "proud of any contribution [it has] been able to make to improve the healthcare provided to the fine men and

---

[1] *Statement by Ike Perlmutter, Bruce Moskowitz and Marc Sherman to ProPublica* (July 18-20, 2018), https://www.documentcloud.org/documents/4704885-Full-Statement-by-Perlmutter-Moskowitz-and-Sherman.html [hereinafter Mar-a-Lago Council Statement].

women who are served by the VA."[2] The VA, on the other hand, has thus far failed entirely to square the Council's power and influence with federal law. Thus, because Defendants have flouted important transparency requirements, the full extent of the Mar-a-Lago Council's influence, activities, and motives remains unknown. Consequently, veterans, their families, and other affected members of the public, like Plaintiff, have almost no insight into whether or how the Council has given consideration to issues critical to veterans, including the privatization of VA healthcare services. Moreover, the lack of transparency leaves the affected public with no view at all into what, if any, precautions have been taken to ensure that members of the Mar-a-Lago Council provide advice and recommendations out of concern for the public good and not their personal profit.

8.      VoteVets, an advocate for veterans, now sues to redress this unlawful and dangerous departure from required procedures. Plaintiff brings this action to enforce the Federal Advisory Committee Act, 5 U.S.C. app. 2 (the "FACA" or the "Act"). The FACA was enacted in 1972 to curb the executive branch's reliance on superfluous and secretive "advisory committees": ad hoc, non-federal bodies that nonetheless counseled governmental decisionmakers on significant swaths of national policy. Prior to the FACA, special interests had used these committees—and the associated veneer of governmental legitimacy—to drive federal decisionmaking outside the light of public scrutiny, participation, and debate.

9.      When the government fails to adhere to the FACA's requirements, public confidence in the government as a whole is diminished. Where, as here, that failure relates to the provision of critical benefits to America's veterans, the consequences are particularly stark.

---

[2] *Id.*

## PARTIES

10.     Plaintiff VoteVets, also known as VoteVets.org, is a not-for-profit organization incorporated under the laws of the District of Columbia. VoteVets has nearly 500,000 supporters with whom it regularly communicates about issues concerning veterans, including VA health care, veterans' employment, and veterans' education benefits. VoteVets' mission is to coordinate and execute public issue campaigns on topics such as these to ensure that the voices of America's veterans are heard regarding matters of public policy.

11.     Defendant the United States Department of Veterans Affairs is a federal agency within the meaning of the FACA, 5 U.S.C. app. 2 § 3(3), and of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), that is headquartered in Washington, D.C.

12.     Defendant Robert Wilkie is sued in his official capacity as Secretary of the United States Department of Veterans Affairs.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the FACA, 5 U.S.C. app. 2, and the APA, 5 U.S.C. §§ 702, 706.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because Defendants are an agency and an officer of the United States and because Defendant the VA resides in Washington, D.C.

## STATUTORY FRAMEWORK

### I.     The Federal Advisory Committee Act

15.     A sunshine law, the Federal Advisory Committee Act requires transparency and permits public participation when the executive branch establishes or uses non-federal bodies for the purpose of seeking advice and generating policy. When passing the FACA, Congress

explained that "[o]ne of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns," citing as an example an Industrial Waste Committee where "only representatives of industry were present[,]" and "[n]o representatives of conservation, environment, clean water, consumer, or other public interest groups were present."  H.R. Rep. No. 92-1017, at 6 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3496.

16.     The FACA defines an "advisory committee" as

any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup . . . which is

(A) established by statute or reorganization plan, or
(B) established or utilized by the President, or
(C) established or utilized by one or more agencies,

in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (i) any committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government, and (ii) any committee that is created by the National Academy of Sciences or the National Academy of Public Administration.

5 U.S.C. app. 2 § 3(2). Advisory committees are subject to the FACA's requirements unless specifically exempted by statute, *see id.* § 4(a); unless established by the Central Intelligence Agency, the Federal Reserve, or the Office of the Director of National Intelligence, *id.* § 4(b); or unless they are purely "local civic group[s]" or "[s]tate or local committee[s]," *id.* § 4(c). None of these exceptions applies here.

17.     Among other things, the FACA requires: (1) before acting or meeting, an advisory committee must file a charter with the Administrator of the General Services Administration ("GSA") or the head of the agency that created the committee; (2) the make-up of the committee must "be fairly balanced in terms of the points of view represented and the functions to be performed"; (3) the charter must contain appropriate provisions to "assure that the advice and

recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment"; (4) all meetings must be open to the public; (5) notice of each meeting must be published in the Federal Register; (6) all interested persons must be allowed to attend, appear before, or file statements with the advisory committee; (7) all records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents made available to or prepared for or by the advisory committee must be available to the public, and (8) detailed minutes of each meeting must be kept. *Id.* §§ 5(b)(2)-(3), 5(c), 9(c), 10(a)(1)-(3), 10(b)-(c).

18.     As specifically relevant here, the FACA requires that, before an advisory committee "meet[s] or take[s] any action," a charter for the committee, containing specified information, must be filed with the GSA Administrator, "in the case of Presidential advisory committees, or . . . with the head of the agency to whom any advisory committee reports and with the standing committees of the Senate and of the House of Representatives having legislative jurisdiction of such agency." *Id.* § 9(c).

19.     The FACA also requires advisory committees to facilitate public comment and participation. Thus, an advisory committee must provide "timely notice" of its meetings to the public, *id.* § 10(a)(2), and must allow interested persons to "attend, appear before, or file statements with [the] committee, subject to such reasonable rules or regulations as the Administrator [of the GSA] may prescribe," *id.* § 10(a)(3). The Administrator of the GSA has implemented these statutory obligations by requiring advisory committees to publish notice of their meetings "at least 15 calendar days prior" to the meetings, unless documented and "exceptional circumstances" require otherwise.  41 C.F.R. § 102-3.150. All meetings must be

held "in a manner or place reasonably accessible to the public" and allow "[a]ny member of the public [to] speak to or otherwise address the advisory committee if the agency's guidelines so permit." *Id.* § 102-3.140(a), (d).

20.     In addition, the FACA requires publication of "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for" the committee. 5 U.S.C. app. 2 § 10(b). These materials must be released well before the relevant advisory committee meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992).

21.     Finally, the FACA provides that "[d]etailed minutes," containing specified information, "of each meeting of each advisory committee shall be kept." 5 U.S.C. app. 2 § 10(c).

## II.     The VA's FACA Guide

22.     The VA publishes a VA Advisory Committee Management Guide that expands on agency expectations "to ensure that VA Federal Advisory Committees carry out their responsibilities under FACA."[3]

23.     In its Guide, the VA reiterates that when the FACA was enacted, Congress determined that "[n]ew committees should be established only when determined to be essential," that "[t]here should be standard and uniform procedures governing the operation of committees," that "Congress and the public should be kept informed of the number, purpose, membership

---

[3] Department of Veterans Affairs, *Advisory Committee Management Guide* 1 (Aug. 2017), https://www.va.gov/ADVISORY/docs/ACMO-2017ACMOGuidesignedbyCoSVA.pdf.

activities, and costs of advisory committees," and that "[t]he function of advisory committees should be advisory only."[4]

24.     The Guide emphasizes that "[n]o advisory committee may meet or take any action until a charter has been filed by VA's [Committee Management Officer] in accordance with FACA."[5]

25.     The Guide notes that

> One of VA's principal objectives in managing its advisory committees is to ensure that committee members appropriately reflect the diversity of American society and the Veteran population. In the selection of members for discretionary committees, VA is required to consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature of the advisory committee. Committees requiring technical expertise should include persons with demonstrated professional or personal qualifications and experience relevant to the functions and tasks to be performed.[6]

## III.    The Administrative Procedure Act

26.     The APA permits judicial review by persons "suffering legal wrong because of agency action, or adversely aggrieved by agency action." 5 U.S.C. § 702; *see id.* §§ 702-704. Under the APA, a "reviewing court . . . shall compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law," *id.* § 706(2)(A).

---

[4] *Id.* at 3.

[5] *Id.* at 10.

[6] *Id.* at 18.

**FACTS**

I.   **The Mar-a-Lago Council Is Established and Holds Meetings Without Observance of Procedures Required by Law**

27.    In January 2017, the Mar-a-Lago Council was established to advise the VA on policy issues affecting veterans and the administration of the Department. As President-elect Trump said, the Council was created "to help" the Secretary of Veterans Affairs "straighten out the VA."[7]

28.    President Trump named Isaac "Ike" Perlmutter to lead the Council, and Bruce Moskowitz and Marc Sherman to serve on the Council.[8]

29.    Mr. Perlmutter is the Chief Executive Officer for the entertainment and production company Marvel Entertainment. Mr. Moskowitz is a doctor practicing in West Palm Beach, Florida, and the founder of the Biomedical Research and Education Foundation. Mr. Sherman is a managing director who specializes in financial fraud and white-collar investigations with the consulting firm Alvarez & Marsal.[9]

30.    While none of these men have notable experience with issues affecting veterans, all three do maintain personal relationships with President Trump that were formed or cemented through their affiliation with the President's golf and social club, the Mar-a-Lago Club, where they are all members.

---

[7] Natalia Wojcik et al., *Read the Transcript From Trump's News Conference*, CNBC, Jan. 11, 2017, https://www.cnbc.com/2017/01/11/transcript-of-president-elect-donald-j-trumps-news-conference.html.

[8] *See* Isaac Arnsdorf, *The Shadow Rulers of the VA*, ProPublica (Aug. 7, 2018), https://www.propublica.org/article/ike-perlmutter-bruce-moskowitz-marc-sherman-shadow-rulers-of-the-va.

[9] *Id.*

31.    In the words of all three Council members: "When we saw an opportunity to assist the Department of Veterans Affairs's leadership in addressing some of the most intractable problems of the VA, we considered it an honor and a privilege to do so."[10]

32.    On information and belief, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman have not been hired or appointed to formal government positions by the President, the Department, or any other agency within the federal government.[11]

33.    On information and belief, no charter for the Council has been made or filed.

34.    On the VA's website, the VA discloses 28 advisory committees.[12] The Mar-a-Lago Council is not listed among them.

35.    Given that the Council has operated in secret, the full scope of its activities are unknown, except to Defendants. However, publicly available information reveals that, as of the date of this filing, the Council has held more than twenty meetings, and has maintained a close working relationship with Defendants. Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman all participated in at least nine of these meetings.

    a.    On December 28, 2016, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman convened a council of healthcare executives to meet with President-elect Trump. According to Mr. Trump's  spokesman, Sean Spicer, the meeting

---

[10] Mar-a-Lago Council Statement, *supra* note 1.

[11] Arnsdorf, *supra* note 8.

[12] U.S. Department of Veterans Affairs, Advisory Committee Management Office, https://www.va.gov/ADVISORY/Advisory_Committees.asp.

included "lots of brainstorming on how to improve and reform [the Department of Veterans Affairs]."[13]

b. On January 12, 2017, during a press conference, President-elect Trump said Mr. Perlmutter was "very, very involved" in advising his team on veterans affairs issues.[14] Following the press conference, a "source with knowledge of the matter confirmed" that Mr. Perlmutter would "take on an informal, though 'significant,' advisory role in Trump's administration with respect to veterans affairs."[15]

c. On or around February 7, 2017, the Mar-a-Lago Council met in person for the first time since President Trump took office.[16] Then-Secretary of Veterans Affairs David Shulkin flew to Mar-a-Lago for the meeting with the Council. On information and belief, Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

d. Writing to then-Secretary Shulkin by email several days after the initial meeting at Mar-a-Lago, the Council outlined the pace at which they would update Mr. Shulkin on the Council's recommendations and progress, saying

---

[13] Priyanka Dayal McCluskey, *Partners HealthCare's CEO Talks Obamacare, VA with Trump*, Bos. Globe, Dec. 28, 2016, https://www.bostonglobe.com/business/2016/12/28/trump-meets-with-partners-chief-executive-fla/gwjDtaS4xrGLIU0HKUK4uK/story.html.

[14] Wojcik et al., *supra* note 7.

[15] Tim Huddleston Jr., *Why Donald Trump Gave Marvel's CEO a Shout-Out in His Press Conference*, Fortune, Jan. 11, 2017, http://fortune.com/2017/01/11/donald-trump-marvel-ceo-ike-perlmutter/.

[16] *The Mar-a-Lago Crowd Documents*, DS-Moskowitz 1 Att 1-2_Redacted 2, ProPublica, https://www.propublica.org/datastore/dataset/the-mar-a-lago-crowd-documents [hereinafter ProPublica Documents]; *see* Arnsdorf, *supra* note 8.

they would "not need to meet in person monthly, but meet face to face only

when necessary" along with "conference calls at a convenient time."[17]

e.  On February 15, 2017, the Mar-a-Lago Council held a 30-minute call with

then-Secretary Shulkin.[18]

f.  On February 23, 2017, the Mar-a-Lago Council held a 45-minute call with

then-Secretary Shulkin and the President and CEO of CVS Health. Mr.

Sherman was unable to participate on this call, but Mr. Moskowitz assured the

group that he would update him following the call.[19]

g.  On February 28, 2017, the Mar-a-Lago Council held a one-hour call to discuss

VA Technology Transfer with then-Secretary Shulkin and a medical

technology transfer authority.[20] Council participants included Mr. Perlmutter,

Mr. Sherman, and Mr. Moskowitz.

h.  On March 3, 2017, the Mar-a-Lago Council held a one-hour call with then-

Secretary Shulkin and senior officials from Apple, the United States Digital

Service, and the Mayo Clinic.[21] Council participants included Mr. Perlmutter,

Mr. Sherman, and Mr. Moskowitz.

i.  On March 4, 2017, the Mar-a-Lago Council held a 30-minute call with then-

Secretary Shulkin.[22]

---

[17] *Id.*
[18] *Id.* at DS Sherman 1-1_Redacted.
[19] *Id.* at DS Sherman 2-3_Redacted.
[20] *Id.* at DS Perlmutter 1-1_Redacted.
[21] *Id.* at DS Perlmutter 2 att 1-1_Redacted.
[22] *Id.* at DS Perlmutter 3-2_Redacted.

j.   On April 11, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin to discuss issues relating to fraud and abuse within the VA system.[23]

k.   On April 12, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin and the Chairman and CEO of Kaiser Foundation Health Plan.[24] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

l.   On April 17, 2017, the Mar-a-Lago Council held a 30-minute call with Johnson & Johnson's executive staff.[25] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

m.   On April 17, 2017, the Mar-a-Lago Council attended a one-hour dinner with then-Secretary Shulkin.[26]

n.   On April 27, 2017, the Mar-a-Lago Council attended a one-and-one-half hour breakfast with then-Secretary Shulkin.[27]

o.   On April 27, 2017, the Mar-a-Lago Council attended a two-hour tour of the Walter Reed Army Medical Center.[28] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

---

[23] *Id.* at DS Sherman 4-1_Redacted.

[24] *Id.* at DS Sherman 5-2_Redacted.

[25] *Id.* at DS Sherman 6-2_Redacted.

[26] *Id.* at DS Sherman 7-1_Redacted.

[27] *Id.* at DS Perlmutter 4-1_Redacted.

[28] *Id.* at DS Perlmutter 5-5a-2_Redacted.

p.  On May 30, 2017, the Mar-a-Lago Council held a thirty-minute call with then-Secretary Shulkin.[29]

q.  On June 14, 2017, the Mar-a-Lago Council held an hour-and-a-half call with then-Secretary Shulkin and staff at the VA, Apple, the Mayo Clinic, Johns Hopkins University, Brigham Health, Connected Health and Partners Health Care, Biomedical Research & Education Foundation, Kaiser Permanente, the Cleveland Clinic, and Mount Sinai Health System.[30] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

r.  On September 1, 2017, the Mar-a-Lago Council held a 30-minute call with then-Secretary Shulkin.[31] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

s.  On December 18, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin, the CEO of the Miami Cancer Institute, and two executives from the American College of Surgeons.[32] Mr. Sherman participated in the call; Mr. Perlmutter and Mr. Moskowitz were included in the correspondence scheduling the call.

t.  On January 29, 2018, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin.[33]

---

[29] *Id.* at DS Moskowitz 4-1a-2-Redacted.

[30] *Id.* at DS Moskowitz 6-1a-3_Redacted.

[31] *Id.* at DS Sherman 9-2_Redacted.

[32] *Id.* at DS Sherman 10-7_Redacted.

[33] *Id.* at DS Moskowitz 6-1_Redacted.

u.  On February 27, 2018, the Mar-a-Lago Council held a three-hour meeting with then-Secretary Shulkin.[34] On information and belief, the meeting occurred at the Mar-a-Lago Club.

v.  On Robert Wilkie's first day as then-acting VA Secretary, Mr. Sherman was waiting for Mr. Wilkie in his office.[35]

w.  On April 2, 2018, the Mar-a-Lago Council held a 30-minute meeting with then-acting Secretary Wilkie.[36]

x.  From November 2017 to at least April 2018, the Council participated "on two or three monthly calls" with the VA contracting team responsible for implementing a ten-year project to reform the VA's digital records system.[37]

y.  On April 2, 2018, then-acting Secretary Wilkie met with the Council at the Mar-a-Lago Club.[38]

36.  Defendants and the Council failed to publish notices of these meetings in the Federal Register. Nor have Defendants or the Council made available any material that the Council has generated or received in connection with these meetings or with its work more generally. Finally, there is no record that Defendants and the Council have kept or published minutes of the Council's many meetings.

---

[34] *Id.* at DS Perlmutter 7-1_Redacted.

[35] Arnsdorf, *supra* note 8.

[36] ProPublica Documents, *supra* note 16, at RW Sherman 1 (Acting Sec)-1_Redacted.

[37] Arthur Allen, *'Who the Hell Is This Person?' Trump's Mar-a-Lago Pal Stymies VA Project*, Politico, Apr. 30, 2018, https://www.politico.com/story/2018/04/30/trump-doctor-health-technology-508297.

[38] ProPublica Documents, *supra* note 16, at RW Itinerary-Fayetteville, NC-WPB, FL 04.17-20.2018-8_Redacted.

37.     As further described below, had notices of the above meetings been published and had the meetings been open to the public, as required by the FACA, VoteVets would have mobilized efforts to ensure that its views on privatization on other veterans' issues were well-represented at the meetings.

## II.     The Mar-a-Lago Council Advises the Department on Policy and Personnel Matters

38.     The Council has broad license to provide advice and recommendations to President Trump and the VA on all manner of issues affecting veterans and the administration of the Department, and Defendants have utilized such advice and recommendations.[39] According to public reports, the Council "is exerting sweeping influence on the VA from Mar-a-Lago."[40]

39.     According to public reports, the Council "[s]poke with VA officials daily," "review[ed] all manner of policy and personnel decisions," "bombarded VA officials with demands," and "prodded the VA to start new programs," and "officials travelled to Mar-a-Lago at taxpayer expense to hear [the Council's] views."[41] Indeed, in a statement by Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz, the Council admitted that "[s]ince late 2016, we have shared our views and perspectives on a number of occasions with VA leadership."[42]

40.     Officials within the Department have confirmed the extent of the Mar-a-Lago Council's influence. Discussing a ten-year project to reform the VA's digital records system, one Department official said, "We just had to make the Mar-a-Lago [Council] comfortable with the deal. . . . They have someone's ear. Power and influence are power and influence."[43] A former

---

[39] *See* Arnsdorf, *supra* note 8.

[40] *Id.*

[41] *Id.*

[42] Mar-a-Lago Council Statement, *supra* note 1.

[43] Allen, *supra* note 37.

Department official went further, saying "[e]verything needs to be run by [the Mar-a-Lago Council]" because "[t]hey view themselves as making the decisions."[44]

41.     Given that the Council has operated outside of public view, the full scope of its influence on policy matters is unknown, except to Defendants. However, publicly available information reveals that the Council is working to provide advice and recommendations with regard to, at a minimum, the following:

   a.   *Nomination of David Shulkin*. On January 11, 2017, President Trump nominated David Shulkin to serve as Secretary of the VA. The nomination was made, in part, on the recommendation of the Mar-a-Lago Council.[45]

   b.   *Veteran suicide*. Beginning in February 2017, the Council convened a series of conference calls with executives at Johnson & Johnson, leading to the development of a public awareness campaign about veteran suicide.[46] The Council and the Department planned to promote the campaign by ringing the closing bell at the New York Stock Exchange. According to public reports, "[t]he event also turned into a promotional opportunity for Perlmutter's company." Marvel, its parent company, Disney, and Johnson & Johnson sponsored the event, where "Shulkin rang the closing bell standing near a preening and flexing Captain America, with Spider-Man waving from the trading pit, and Marvel swag was distributed to some of the attendees."[47]

---

[44] Arnsdorf, *supra* note 8 (quoting a former VA official).

[45] *Id*.

[46] *Id*.

[47] *Id*.

c. *Mobile application for veterans.* The Council recommended that Apple and the VA develop an app for veterans to find nearby medical services. The Council then facilitated a series of calls with senior Apple executives to implement their recommendation. In one such meeting, on June 14, 2017, Council members led a call regarding the recommendation in which, according to Department records, the following individuals participated: the Secretary of Veterans Affairs, the Acting Under-Secretary for Health, a Senior Advisor to the Secretary, the Acting Assistant Secretary & Chief Information Officer, a Senior Advisor to the Acting Under-Secretary for Health, the CEO of Apple, the COO of Apple, the Director of Global Government for Apple, the Vice President for Public Policy and Government Affairs of Apple, and more than ten executives from medical institutions.[48] VA officials reported back to the Council to update members on progress. In one email, a senior Department official told the Council, "I will update the tracker, and please do let me know if this helps answers [sic] questions around Apple's efforts or if additional clarification is required."[49] Council member Marc Moskowitz brought his son Aaron Moskowitz on to advise the VA on the project.

d. *Medical device registry.* On June 4, 2018, at the recommendation of Council members, the VA organized a summit of experts on medical device registries with the goal of building a national registry that notified patients of medical device product recalls. Council members joined Department officials on

---

[48] ProPublica Documents, *supra* note 16, at DS Perlmutter-6-Att-6_Redacted.

[49] Arnsdorf, *supra* note 8.

weekly conference calls to discuss organizing the "Medical Device Registry Summit" and making a public commitment to build a registry at the VA. During his remarks at the summit, then-acting Secretary Peter O'Rourke thanked Council member Mr. Moskowitz for being one of the "driving forces" behind the initiative.[50] Leading up to the summit, SreyRam Kuy, a Senior Advisor to the VA Secretary charged with organizing the summit, requested a meeting with then-Secretary Shulkin to provide an "update on the Medical Device Registry Summit/Bruce Moskowitz efforts."[51]

e. *Cerner contract.* According to four former and current senior VA officials, Council members played a significant role in recommending, and at some points even directing, VA action on the transformation of the VA's digital records system, the biggest health information technology project in history.[52] In June 2017, then-Secretary Shulkin awarded a major contract for work related to the overhaul to Cerner Corp. However, due to Council member concerns with the company, the agreement was delayed for months.[53] During that time, a team of investigators from VA's Office of Information and Technology were tasked with evaluating Council member concerns and were even directed to look into the Cerner system Mr. Moskowitz used in his personal business.[54] The Council's involvement in the project was so

---

[50] *Id.*

[51] ProPublica Documents, *supra* note 16, at DS-Moskowitz-7-1-Redacted.

[52] Allen, *supra* note 37.

[53] *Id.*

[54] *Id.*

pervasive that on February 27, 2018, then-Secretary Shulkin flew to Mar-a-Lago for the purpose of meeting with Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman to "close the deal on the Cerner contract."[55]

    f.    *VA privatization.* The Council has advised the Department to privatize essential healthcare services the VA provides to veterans. For example, in an email to then-Secretary Shulkin and other VA officials on September 18, 2017, the Council said,

We have been talking to Dr. Shulkin for many months about identifying the existence of healthcare delivery issues at VA medical centers . . . . As an example, we think that some of the VA hospitals are delivering some specialty healthcare when they shouldn't and when referrals to private facilities or other VA centers would be a better option. Not every VA hospital has both the breadth and depth of specialized medical expertise in every specialty, which then creates risk to the patients and the system. One idea discussed was to institute a self-rating program, but self-ratings are rarely of any practical use. Our solution is to make use of the academic medical centers and medical trade groups, both of whom have offered to send review teams to the VA hospitals to help in this effort. The purpose of this email is to see if you know of any impediments to taking them up on this offer and to get your thoughts in general about this approach.[56]

On September 24, 2017, then-Secretary Shulkin responded to the Council recommendation, saying,

I agree with Ike and the team that measuring VA against private hospitals is critical—so while [the Centers for Medicare and Medicaid Services] is not able to deliver this for months we have now developed our own tool to do this—we are fine tuning the model this week and can share it by [F]riday. If it does not get us where we need to be then working quickly with an independent group would make a great deal of sense.[57]

    g.    *Evaluation of VA surgery programs.* At the Council's recommendation, the VA developed a plan for the American College of Surgeons to evaluate the

---

[55] Arnsdorf, *supra* note 8.

[56] ProPublica Documents, *supra* note 16, at DS-Moskowitz-5-4_Redacted.

[57] *Id.*

surgery programs at several VA hospitals. In December 2017, after discussing

the idea with then-Secretary Shulkin, Mr. Sherman reported back to Michael

Zinner, a member of the American College of Surgeons' board of regents. In

an email sent by Mr. Sherman to Mr. Zinner on December 6, 2017, Mr.

Sherman said, "[The VA Secretary] is ready to kick it off and is standing by

for me to set up a call with you, David Hoyt, me and him to do so."[58] After

Mr. Zimmer assured Mr. Sherman that he would "get working on this call,"

Mr. Sherman added several individuals to the email chain, including Mr.

Perlmutter and Mr. Moskowitz. When adding the Council members, Mr.

Sherman explained that he was "including my gang as a cc."[59] On February

14, 2018, then-Secretary Shulkin emailed a progress update on the project to

at least two Council members, telling the Council, "We're getting close."[60]

Several months later, on March 7, 2018, then-Secretary Shulkin advised his

staff to set up a conference call with the American College of Surgeons to

develop a contract for the work, telling him he wanted the project "to start

asap."[61]

h.   *Tracking human tissue devices.* On January 19, 2018, then-Secretary Shulkin

and at least five other senior VA officials attended a meeting with the

American Association of Tissue Banks ("AATB") and the AATB Tissue

Policy Group. Following the meeting, the organizations sent then-Secretary

---

[58] *Id.* at DS-Sherman-10-7_Redacted.

[59] *Id.*

[60] *Id.* at DocumentsReport2018-07-09-11.

[61] *Id.*

Shulkin a proposal to "partner with the VA" in developing "the development of appropriate systems for tracking and tracing all devices, including human tissue devices."[62] On February 2, 2018, then-Secretary Shulkin forwarded the proposal to Council member Mr. Moskowitz for the Council's recommendation, saying "Bruce - what do you think of this?" Mr. Moskowitz responded with a recommendation, to which then-Secretary Shulkin stated, "Ok."[63]

i.   *Firing of David Shulkin.* Just as Mr. Shulkin's tenure at the helm of the Department began, in part, on the recommendation of the Mar-a-Lago Council, it likewise came to an end once Mr. Shulkin fell out of favor with the Council. According to three former Trump Administration officials, while several factors contributed to Mr. Shulkin's firing, it was his friction with the Mar-a-Lago Council over the Cerner contract that ultimately led to President Trump's decision to remove the VA Secretary. On December 4, 2017, Jake Leinenkugel, the White House Senior Advisor on veterans affairs, sent a memo to a political appointee within the Department outlining "key items that need to be addressed within the VA Leadership structure."[64] Among the items Mr. Leinenkugel highlighted were to "[p]ut [Shulkin] on notice to exit" and "*[u]tilize outside team (Ike)*" when considering options for replacing him. [65]

---

[62] *Id.*

[63] *Id.*

[64] Email from Jake Leinenkugel to Camilo J. Sandoval (Dec. 4, 2017), https://assets.documentcloud.org/documents/4614204/Leinenkugel-Sandoval-Memo.pdf.

[65] Arnsdorf, *supra* note 8 (emphasis added) (second alteration in the original).

j. *Mental Health.* The Council provided input on the development of a mental health initiative. On February 28, 2018, Department chief of staff Peter O'Rourke responded to the Council's recommendations related to the new initiative, saying, "Received." "I will begin a project plan and develop a timeline for action."[66]

42.  In addition to its actions, the Council's own words, and the words of Trump Administration officials, show that in holding the meetings and making the recommendations detailed above, the Council operated as a group.

a. When Mr. Sherman was unable to participate in a Council meeting on February 23, 2017, Mr. Moskowitz assured Council members that he would "update [Mr. Sherman] after the call."[67]

b. On September 7, 2017, Mr. Perlmutter sent an email to then-Secretary Shulkin regarding a story he had been told about a veteran having trouble accessing military records. With other Council members copied on the email, Mr. Perlmutter stated, "we are making very good progress, but this is an excellent reminder that we are still very far away from achieving our goals."[68]

c. On September 24, 2017, then-Secretary Shulkin responded to a Council recommendation saying, "I agree with Ike and the team that measuring VA against private hospitals is critical."[69] "Ike" refers to Mr. Perlmutter; "the team" refers to the Council.

---

[66] ProPublica Documents, *supra* note 16, at Responsive-Docs_Redacted.
[67] *Id.* at DS Sherman 2-3.
[68] *Id.* at DocumentsReport2018-07-09-11-53-56_Redacted[2].
[69] *Id.* at DS-Moskowitz-5-4_Redacted.

d.  On October 22, 2017, Mr. Perlmutter sent an email congratulating then-Secretary Shulkin for his interview on Fox News. With other Council members copied on the email, Mr. Perlmutter stated, "That interview really did a great service to what you (and we) are doing to improve the quality of care for our veterans for the long term."[70]

e.  On February 14, 2018, then-Secretary Shulkin emailed the Council to update members on progress regarding the implementation of a Council recommendation. Mr. Shulkin said, "We're getting close."[71]

f.  On February 24, 2018, then-Secretary Shulkin emailed Mr. Moskowitz to forward a data-sharing proposal the Department received from several major hospitals. Mr. Moskowitz replied to Mr. Shulkin, promising to "discuss with everyone."[72]

g.  On February 28, 2018, shortly after Peter O'Rourke became Department chief of staff, he emailed the Council—Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz—saying, "Thank you for your support of the President, the VA, and me as we work to make the VA great." The Council replied to the email and shared contact information for Council members with Mr. O'Rourke, saying "please feel free to contact any of us at anytime . . . look forward to achieving the goals discussed."[73]

---

[70] *Id.* at DocumentsReport2018-07-09_11-53-56_Redacted[2].

[71] *Id.*

[72] *Id.*

[73] *Id.* at Responsive-Docs_Redacted.

h.  On February 28, 2018, Mr. Sherman responded to Mr. O'Rourke's e-mail,
    stating, "We are always excited to provide each of our thoughts to you and the
    Secretary as you both more forward in making decisions on how to best run
    and improve the veterans healthcare delivery system."[74]

i.  On April 21, 2018, in an email to then-acting Secretary Wilkie, Mr.
    Moskowitz stated, "I am sure that I speak for the group, that both you and
    Peter astounded all of us on how quickly and accurately you assessed the key
    problems and more importantly the solutions that will be needed to finally
    move the VA in the right direction."[75]

j.  In an April 21, 2018 email to then-acting Secretary Wilkie, Mr. Perlmutter
    expressed, "For the first time in 1 1/2 years we feel everyone is on the same
    page. . . . Again, please know we are available and want to help any possible
    way 24/7."[76]

k.  Finally, in a statement issued jointly over July 18-20, 2018, Mr. Perlmutter,
    Mr. Moskowitz, and Mr. Sherman detailed the Mar-a-Lago Council's
    influence and activities. The joint statement is worth quoting at length
    (below). The statement's use of collective pronouns (*e.g.*, "we," "our"),
    without exception, and its descriptions of how the Council set about its
    business, underscore what the above lists of actions and statements make
    clear: that the Council operated as an advisory committee.

---

[74] *Id.*

[75] *Id.* at RE_[EXTERNAL] Meeting follow up_Redacted.

[76] *Id.* at RE_[EXTERNAL] From & Ike Perlmutter_Redacted.

**Statement by Ike Perlmutter, Bruce Moskowitz and Marc Sherman**

The three of us come from very different backgrounds, but we have long shared a deep concern for the health of our veterans. When we saw an opportunity to assist the Department of Veterans Affairs's leadership in addressing some of the most intractable problems of the VA, we considered it an honor and a privilege to do so. After the President's election, we saw an opportunity to share our expertise in organizational management and our personal relationships with healthcare experts around the country to assist the VA as it undertook an aggressive reform of its healthcare delivery and systems. We offered our counsel, and the advice of these healthcare experts, to assist the President, Secretary and VA leadership in their making the essential decisions—sometimes life or death—that affect our nation's veterans. At all times, we offered our help and advice on a voluntary basis, seeking nothing at all in return.

It was Mr. Perlmutter's personal relationship with the President that allowed us the opportunity to be of service. Since late 2016, we have shared our views and perspectives on a number of occasions with VA leadership. For the most part, those interactions were either to facilitate introductions to subject matter healthcare and technology experts with whom we had relationships, or to discuss healthcare delivery and healthcare quality challenges facing the agency and therefore affecting our veterans. While we were always willing to share our thoughts, we did not make or implement any type of policy, possess any authority over agency decisions, or direct government officials to take any actions. That was not our role, and we were at all times very well aware of that. We provided our advice and suggestions so that members of the Administration could consider them as they wished to make their own decisions on actions to be taken. To the extent anyone thought our role was anything other than that, we don't believe it was the result of anything we said or did.

At no time was our volunteer assistance a secret. We were on emails and conference calls with senior staff, and Secretary Shulkin referred on numerous occasions to his discussions with outside experts. He specifically mentioned one or more of us at public events covered by the media. We were also present at a post-meeting White House press gaggle on VA-related issues. We are proud of any contribution we have been able to make to improve the healthcare provided to the fine men and women who are served by the VA. None of us has gained any financial benefit from this volunteer effort, nor was that ever a consideration for us. The only benefit we gained was the satisfaction of helping America's veterans get the very best healthcare possible, in the most efficient and effective manner.

Since late 2016, we have shared our views and perspectives on various issues on a number of occasions with VA leadership. For the most part, those interactions were either to facilitate introductions to subject matter healthcare and technology experts with whom we had relationships, or to discuss healthcare delivery and

healthcare quality challenges facing the agency that affected America's veterans.
. . . [77]

## DEFENDANTS ARE VIOLATING THE FACA AND HARMING PLAINTIFF

43.     As detailed above, the Mar-a-Lago Council is an advisory committee under the FACA. The Council has an organized structure, a fixed membership, and a specific purpose. The Council is comprised of at least three members—Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman—who, under Mr. Perlmutter's leadership, make recommendations and provide advice to the Department and other federal officials. The Council's aim is to influence how the Department carries out its mission with respect to an ever-growing number of discrete goals and projects.

44.     Nonetheless, Defendants and the Council have not complied with the FACA's requirements. The Council lacks a charter. Defendants have not published notice of the Council's meetings, and thereby have thwarted any attempts by Plaintiff and others to participate in those meetings. Defendants have not made public the materials provided to or generated by the Council. And Defendants and the Council have not kept minutes of the Council's meetings, all in violation of the FACA, and with harmful effects on Plaintiff and others.

45.     Plaintiff VoteVets has a distinct interest in the Administration's policies towards veterans, and in its efforts to privatize healthcare services for veterans in particular. VoteVets believes the VA healthcare system should not, and must not, be privatized. On April 4, 2018, VoteVets issued a statement criticizing the Administration's attempts to transfer the healthcare "system relied on by millions of American veterans into the hands of for-profit health groups." On March 5, 2018, in an effort to access information related to the Administration's privatization efforts, VoteVets submitted a Freedom of Information Act request to the VA. As relevant here,

---

[77] Mar-a-Lago Council Statement, *supra* note 1.

Plaintiff's FOIA request sought records related to the role private individuals and pro-privatization advocacy groups have played in influencing the Administration's VA healthcare policy. In particular, the request sought communications from the Department related the President Trump's firing of then-Secretary Shulkin and whether Mr. Shulkin's opposition to VA privatization efforts contributed to his termination. The Department failed to adequately respond to Plaintiff's FOIA request. As a result, Plaintiff was forced to file suit on April 4, 2018, to obtain the requested information.

46.     VoteVets works to counter VA privatization efforts in a number of other ways as well. VoteVets educates its supporters via email and social media about the issue and the Administration's privatization plans. VoteVets advocates at the federal level for laws and policies that support and strengthen the continuation of a public VA healthcare system. VoteVets also expends significant resources educating the broader public about the dangers of VA privatization. For example, on September 14, 2017, VoteVets announced a $400,000 advertising campaign across thirteen states to mobilize Americans to oppose the Administration's privatization efforts.

47.     Given VoteVets' dedication to improving veterans policy and advocacy against the privatization of VA services—and therefore, its keen interest in understanding and uncovering the Mar-a-Lago Council's activities, and desire to take part in the Council's business—Defendants' violation of the FACA has harmed and will harm VoteVets in at least two ways. First, by violating the public records requirements of the FACA, Defendants have denied VoteVets its statutory right to review the Mar-a-Lago Council's documents and meeting minutes. Second, by violating the requirements of FACA, Defendants have deprived VoteVets of

its statutory right to participate in the Mar-a-Lago Council's meetings and represent its views to

the Council regarding, among other issues, the privatization of VA services.

## CLAIM FOR RELIEF

### Count One
### (Violation of the FACA and the APA)

48.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as

if fully set forth herein.

49.     The Mar-a-Lago Council is an advisory committee within the meaning of the

FACA because it is a "council . . . which is established or utilized by" Defendant the VA "in the

interest of obtaining advice or recommendations for the President or one or more agencies or

officers of the Federal Government." 5 U.S.C. app. 2 § 3(2).

50.     By failing to file a charter for the Council, Defendants and the Council failed to

comply with the FACA's non-discretionary requirement under 5 U.S.C. app. 2 § 9(c). Therefore,

under the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5

U.S.C. § 706(1), and acted contrary to law, *id*. § 706(2)(A).

51.     By failing to publish notice of Council meetings in the Federal Register and by

failing to allow interested parties to attend those meetings, Defendants and the Council are

failing to comply with the FACA's non-discretionary requirements under 5 U.S.C. app. 2

§ 10(a)(1)-(3). Therefore, under the APA, Defendants have unlawfully withheld or unreasonably

delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id*. § 706(2)(A).

52.     By failing to make available "the records reports, transcripts, minutes,

appendixes, working papers, drafts, studies, agenda, or other documents which were made

available to or prepared for or by" the Council, Defendants and the Council are failing to comply

with the FACA's non-discretionary requirements under 5 U.S.C. app. 2 § 10(b). Therefore, under

the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5 U.S.C.

§ 706(1), and acted contrary to law, *id.* § 706(2)(A).

53.     By failing to "ke[ep]" "[d]etailed minutes" of all Council meetings, Defendants

and the Council are failing to comply with the FACA's non-discretionary requirements under 5

U.S.C. app. 2 § 10(c). Therefore, under the APA, Defendants have unlawfully withheld or

unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id.*

§ 706(2)(A).

54.     Defendants' failure to comply with the FACA in relation to the Mar-a-Lago

Council is "final agency action for which there is no other adequate remedy in a court," and

therefore is "subject to judicial review." *Id.* § 704; *see id.* § 702.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1.     declare that Defendants' creation and administration of the Mar-a-Lago Council

violates the FACA and the APA, and that the Council is therefore unlawful;

2.     enjoin Defendants from utilizing the Mar-a-Lago Council as an advisory

committee unless and until Defendants and the Council comply with the FACA;

3.     through the named Defendants, enjoin the Mar-a-Lago Council from meeting,

advising Defendants, and otherwise conducting Council business unless and until Defendants

and the Council comply with the FACA;

4.     order Defendants to file a charter for the Council;

5.     order Defendants to publish notice of the Council's meetings in the Federal

Register;

6.     order Defendants to permit public participation at the Council's meetings;

7.      order Defendants to ensure that detailed minutes of the Council's meetings are kept;

8.      order Defendants to provide to Plaintiff a full and complete copy of all records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents that have been made available to, or prepared for or by, the Council;

9.      award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

10.     grant any other relief this Court deems appropriate.

Dated:   August 16, 2018                        Respectfully submitted,

                                                /s/ *Adam Grogg*
                                                Adam Grogg (D.C. Bar No. 1552438)
                                                Karianne M. Jones (D.C. Bar No. 187783)
                                                Javier M. Guzman (D.C. Bar No. 462679)
                                                Democracy Forward Foundation
                                                1333 H St. NW
                                                Washington, DC  20005
                                                (202) 448-9090
                                                agrogg@democracyforward.org
                                                kjones@democracyforward.org
                                                jguzman@democracyforward.org

                                                *Counsel for Plaintiff*