**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VOTEVETS ACTION FUND,

       Plaintiff,

    v.

UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS, *et al.*,

       Defendants.

Case No. 18-1925 (TJK)

**MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.       Statutory Background ............................................................................................... 2

         A.       The Federal Advisory Committee Act ................................................................ 2

         B.       The Administrative Procedure Act .................................................................... 3

II.      This Lawsuit .......................................................................................................... 3

STANDARDS OF REVIEW ................................................................................................. 5

ARGUMENT ..................................................................................................................... 6

I.       The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing. ............ 6

         A.       VoteVets Fails to Identify an Organizational Injury. ......................................... 7

         B.       VoteVets' Assertions of Procedural Violations Do Not Relieve It of
                  Demonstrating a Concrete Injury. ................................................................... 9

         C.       VoteVets Cannot Rely on Informational Injury Where It Has Not Requested
                  the Information It Seeks Nor Plausibly Alleged the Existence of a FACA
                  Committee. ................................................................................................... 11

         D.       VoteVets Has Not Shown Causation or Redressability. ..................................... 12

II.      The Complaint Should Be Dismissed for Failure to State a Violation of FACA ............. 13

         A.       The Complaint Does Not Plausibly Allege that Defendants "Established" a
                  FACA Committee. ......................................................................................... 13

         B.       The Complaint Does not Plausibly Allege that Defendants "Utilized" the
                  Three Individuals as a FACA Committee. ......................................................... 19

CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

**CASES**

*AAPS v. Clinton*,
  997 F.2d 898 (D.C. Cir. 1993) ................................................................. 14, 16

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
  787 F.3d 524 (D.C. Cir. 2015) ..................................................................... 5

*ACLU v. Trump*,
  266 F. Supp. 3d 133 (D.D.C. 2017) ............................................................. 3

*Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*,
  92 F.3d 902 (9th Cir. 1996) ..................................................................... 14, 20

*Arista Records LLC v. DOE*,
  604 F.3d 110 (2d Cir. 2010) ...................................................................... 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 5, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 5

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) .................................................................. 5, 6

*Byrd v. EPA*,
  174 F.3d 239 (D.C. Cir. 1999) .................................................... 13, 14, 17, 20

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*,
  No. 14-CV-953 (GK), 2016 WL 7376847 (D.D.C. Dec. 19, 2016) ..................... 8, 9

*Ctr. for Law & Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) .................................................................. 9

*Edwards v. Aurora Loan Servs., LLC*,
  791 F. Supp. 2d 144 (D.D.C. 2011) ............................................................. 5

*Envtl. Working Grp. v. FDA*,
  No. 1:16-CV-2435-TNM, 2018 WL 1384125 (D.D.C. Mar. 19, 2018) ................. 7

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ............................................................. 7, 8, 9

*Food Chem. News v. Young*,
  900 F.2d 328 (D.C. Cir. 1990)........................................................................ 17, 20

*Freedom Watch, Inc. v. Obama*,
  807 F. Supp. 2d 28 (D.D.C. 2011) ....................................................................... 3

*Freedom Watch, Inc. v. Obama*,
  930 F. Supp. 2d 98 (D.D.C. 2013) ...................................................................... 16

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016)......................................................................11, 12

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
  185 F. Supp. 2d 9 (D.D.C. 2001) .......................................................................... 5

*Heckler v. Chaney*,
  470 U.S. 821 (1985).............................................................................................. 3

*Huron Envt'l Activist League v. EPA*,
  917 F. Supp. 34 (D.D.C. 1996) ..................................................................... 19, 21

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005)............................................................................ 16

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
  736 F. Supp. 2d 24 (D.D.C. 2010) ..................................................................... 21

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004).............................................................................. 6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994).............................................................................................. 5

*Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*,
  No. 17-1354, 2017 WL 3028832 (D.D.C. July 18, 2017)................................... 12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).............................................................................................. 6

*Metcalf v. Nat'l Petroleum Council*,
  553 F.2d 176 (D.C. Cir. 1977)............................................................................ 10

*Nader v. Baroody*,
  396 F. Supp. 1231 (D.D.C. 1975) ................................................................. 14, 19

*Nat. Res. Def. Council, Inc. v. Herrington,*
    637 F. Supp. 116 (D.D.C. 1986) .................................................................. 1

*Nat'l Ass'n of Home Builders v. EPA,*
    786 F.3d 34 (D.C. Cir. 2015) ...................................................................... 6

*New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Service,*
    208 F. Supp. 3d 142 (D.D.C. 2016) ........................................................... 8

*People for Ethical Treatment of Animals, Inc. v. Barshefsky,*
    925 F. Supp. 844 (D.D.C. 1996) .............................................................. 17

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
    797 F.3d 1087 (D.C. Cir. 2015) ................................................................. 7

*Physicians Comm. for Responsible Med. v. Horinko,*
    285 F. Supp. 2d 430 (S.D.N.Y. 2003) ...................................... 13, 14, 20, 21

*\*Public Citizen v. U.S. Dep't of Justice,*
    491 U.S. 440 (1989) ........................................................................ *passim*

*\*R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.,*
    810 F.3d 827 (D.C. Cir. 2016) ............................................................. 9, 10

*Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n,*
    67 F. Supp. 3d 373 (D.D.C. 2014) ......................................................... 6, 7

*Sofamor Danek Grp., Inc. v. Gaus,*
    61 F.3d 929 (D.C. Cir. 1995) ................................................................... 21

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540 (2016) ............................................................................... 6

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ................................................................................. 9

*Turlock Irrigation Dist. v. FERC,*
    786 F.3d 18 (D.C. Cir. 2015) ..................................................................... 7

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................. 6

*Wash. Legal Foundation v. U.S. Sentencing Comm'n,*
    17 F.3d 1446 (D.C. Cir. 1994) .......................................................... 20, 21

\**Washington Toxics Coal. v. EPA*,
357 F. Supp. 2d 1266 (W.D. Wash. 2004) ........................................ 15, 22

**STATUTES**

5 U.S.C. App. 2 § 2 ................................................................................. 2

5 U.S.C. App. 2 § 3 ............................................................... 2, 3, 13, 19

5 U.S.C. App. 2 § 5 ................................................................................. 2

5 U.S.C. App. 2 § 7 ................................................................................. 3

5 U.S.C. App. 2 § 9 ................................................................................. 2

5 U.S.C. App. 2 § 10 .......................................................................... 2, 12

5 U.S.C. § 704 ......................................................................................... 3

5 U.S.C. §§ 701–706 ............................................................................... 3

**REGULATIONS**

41 C.F.R. part 102-3 ............................................................................... 3

41 C.F.R. § 102-3.25 ............................................................................. 20

41 C.F.R. § 102-3.40 ....................................................................... 16, 17

**RULES**

Fed. R. Civ. P. 10 ................................................................................... 6

Fed. R. Civ. P. 12 ............................................................................. 5, 22

**OTHER AUTHORITIES**

5A The Late Charles Alan Wright et al., Federal Practice and Procedure § 1327 (3d ed.) ............. 6

## INTRODUCTION

Confusing theoretical possibility with legal sufficiency, Plaintiff's lawsuit is based on the thoroughly discredited premise that the Federal Advisory Committee Act ("FACA") applies to "every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 453 (1989).  Rejecting that interpretation as one that would "stifle much of the daily intercourse between the government and the rest of the nation," *Nat. Res. Def. Council, Inc. v. Herrington*, 637 F. Supp. 116, 118-19 (D.D.C. 1986), courts have long held that FACA applies only to committees established, managed, or controlled by the executive branch.  *See, e.g.*, *Public Citizen*, 491 U.S. at 457-64.

The Complaint cannot plausibly survive that standard.  Plaintiff does not allege that the three individuals it contends comprised a FACA committee were brought together by the Defendants in this action (collectively, the "Department" or the "VA"); that they took any action as a group; that they voted, reached consensus, or prepared a report; or that they were subject to management or control by the Department.  Rather, the Complaint itself paints a picture of the three individuals voluntarily offering their assistance to the Department.  While it is an agency's job to make sure that its committees comply with FACA's requirements, that is only so if the agency establishes, manages, or controls the committee.  Because the unstructured and informal meetings among the three individuals alleged in the Complaint do not amount to action by an advisory committee within the meaning of FACA, Plaintiff can demonstrate neither standing to bring its claims nor a plausible claim to relief.  The case should therefore be dismissed.

# BACKGROUND

## I.      Statutory Background

### A.      The Federal Advisory Committee Act

Congress enacted FACA in 1972 to reduce the growing cost of unnecessary blue ribbon commissions, advisory panels, and honorary boards set up by the government to advise the President and federal agencies. *Public Citizen*, 491 U.S. at 453. The statute seeks to eliminate federal advisory committees that have outgrown their usefulness and impose uniform procedures on those that are indispensable, thereby ensuring that Congress and the public remain "apprised of their existence, activities, and cost." *Id.* at 446 (citation and internal quotation marks omitted); *see also* 5 U.S.C. App. 2 § 2.

FACA defines an "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group . . . which is . . . established or utilized by the President, or . . . one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. app. 2 § 3(2). Groups that meet this definition must comply with an array of procedural requirements. Among others, they must file a charter prior to commencing their first meeting, 5 U.S.C. app. 2 § 9(c); announce their upcoming meetings in the Federal Register and hold them open to the public unless an exception applies, *id.* § 10(a)(1)-(2); keep detailed minutes of each meeting, *id.* § 10(c); and publicly disclose their "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents[.]" *Id.* § 10(b). In addition, FACA requires that each advisory committee be "fairly balanced in terms of the points of view represented and the functions to be performed[.]" *Id.* § 5(b)(2).

FACA authorizes the General Services Administration ("GSA") to promulgate administrative guidelines applicable to federal advisory committees. *Id.* §§ 3(1), 7(c). GSA's FACA-implementing regulations are entitled "Federal Advisory Committee Management" and codified, as amended, at 41 C.F.R. part 102-3. These regulations "do not necessarily carry the force of law, but they are at very least instructive because the GSA is 'the agency responsible for administering FACA[.]'" *ACLU v. Trump*, 266 F. Supp. 3d 133, 140 (D.D.C. 2017) (quoting *Pub. Citizen*, 491 U.S. at 465 n.12).

### B.     The Administrative Procedure Act

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, establishes a waiver of sovereign immunity and a cause of action for injunctive or declaratory relief for parties "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Id.* § 702; *see also Heckler v. Chaney*, 470 U.S. 821, 828 (1985). These provisions apply only to "*[a]gency action* made reviewable by statute and final *agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added); *see also id.* § 701(b)(1). The APA does not provide a cause of action for directly suing an advisory committee because an "entity cannot be at once both an advisory committee and an agency." *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 33 (D.D.C. 2011).

## II.    This Lawsuit

On August 16, 2017, Plaintiff VoteVets Action Fund ("Plaintiff" or "VoteVets"), a not-for-profit organization engaged in advocacy regarding issues affecting veterans, filed this lawsuit against the Department of Veteran Affairs and VA Secretary Robert Wilkie. Compl. ¶ 10. The Complaint asserts a single claim alleging that the Department violated FACA by soliciting advice and following recommendations from three individuals—Ike Perlmutter, Dr. Bruce Moskowitz,

and Max Sherman (collectively, the "Three Individuals")—without complying with FACA's procedural and disclosure requirements.  *See generally* Compl. & *id.* ¶¶ 48-54.  VoteVets claims that the Three Individuals are each members of President Trump's social club, Mar-a-Lago in Palm Beach, Florida and that they constitute a FACA committee because they offered advice to the Department and conveyed a collective objective to "improve the quality of care for our veterans for the long term."  Compl. ¶ 42(d).

For example, VoteVets asserts that in December 2016, the Three Individuals convened a group of healthcare executives to "brainstorm[] [with then-President-elect Trump] on how to improve and reform" the Department.  Compl. ¶ 35(a).  VoteVets further alleges that, after President Trump took office, the Three Individuals participated in telephone conversations and miscellaneous meetings with Department officials or pertaining to Department affairs, such as a tour of a VA hospital, phone calls with representatives from the private sector, and calls with the contracting team responsible for implementing a project to reform the VA's digital records system.  Compl. ¶ 35.  During this time, the Three Individuals are alleged to have provided advice on a wide array of topics, including the nomination and firing of former-Secretary David Shulkin, veteran suicide, a mobile application, a medical device registry, a VA contract, options for evaluating the Department's surgery programs, tracking of human tissue devices, and mental health.  Compl. ¶ 35.

VoteVets asserts that the Three Individuals' provision of advice to the VA is improper because it was provided "without being subjected to [FACA's] transparency requirements[.]"  Compl. ¶ 1.  VoteVets seeks, among other requested relief, an order requiring the Three Individuals to open their meetings and records to the public and "enjoin[ing] the [Three Individuals] from

meeting, advising Defendants, and otherwise conducting [their] business unless and until Defendants . . . comply with the FACA." Compl. at Prayer for Relief ¶¶ 3, 6-8.

## STANDARDS OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's jurisdiction over the subject matter of the complaint. The plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In deciding whether that burden has been met at the pleading stage, a court generally may presume the truth of any well-pled factual allegations in the complaint but need not and should not accept "naked assertions devoid of further factual enhancement." *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 149-50 (D.D.C. 2011) (citations omitted). A plaintiff's allegations of jurisdiction should be closely scrutinized because a court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (citations omitted).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is not met by "labels and conclusions," *Twombly*, 550 U.S. at 555; rather, a plaintiff must plead specific "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). In deciding the motion, a court generally must accept the well-pled factual allegations as true and any

reasonable inferences drawn from those allegations but not inferences that are "unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Browning*, 292 F.3d at 242.  The court may independently consider any materials incorporated by reference in the complaint that are integral to the plaintiff's claims.  *See* Fed. R. Civ. P. 10(c); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also* 5A The Late Charles Alan Wright et al., Federal Practice and Procedure § 1327 (3d ed.) ("The district court obviously is not bound to accept the pleader's allegations as to the effect of [incorporated materials], but can independently examine the document[s] and form its own conclusions[.]").

## ARGUMENT

### I.   The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing.

A showing of standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The "irreducible constitutional minimum" of standing requires a plaintiff to demonstrate an injury-in-fact that is: (1) concrete and particularized, and actual or imminent, not conjectural or hypothetical, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (citing *Warth*, 422 U.S. at 518).

An organizational plaintiff may satisfy these elements either through its own organizational injury or, under the doctrine of "associational standing," by showing that at least one of its members satisfies the injury-in-fact, causation, and redressability requirements.  *Nat'l Ass'n of Home Builders v. EPA*., 786 F.3d 34, 40 (D.C. Cir. 2015).  However, to invoke associational standing, a plaintiff "bear[s] the burden of specifically identifying at least one 'member [who] had or would suffer harm' from each challenged agency action." *Sec. Indus. & Fin. Markets Ass'n v.*

*U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 400 (D.D.C. 2014) (citation omitted). VoteVets has not done so and thus appears to assert standing only on its own behalf.

A.     **VoteVets Fails to Identify an Organizational Injury.**

The D.C. Circuit has explained that an organizational plaintiff asserting standing on its own behalf must demonstrate, first, a concrete injury to its interests, and second, that it expended organizational resources to counteract that injury. *See, e.g.*, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). To satisfy the first element of this standard, an organization cannot rely on "a mere setback to [its] abstract social interests" but rather must allege a "'concrete and demonstrable injury to [its] *activities*.'" *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) ("*PETA*") (emphasis added, citations and quotation marks omitted). Stated otherwise, the organization may not rest on an alleged impairment of its policy goals but must show that the defendant's actions demonstrably harmed its "daily operations" or its "ability to provide services." *Food & Water Watch*, 808 F.3d at 919 (citations and internal quotation marks omitted); *see also Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) ("[A]n organization must allege that the defendant's conduct 'perceptibly impaired' [its] ability to provide services."); *Envtl. Working Grp. v. FDA*, No. 1:16-CV-2435-TNM, 2018 WL 1384125, at *4 & n.4 (D.D.C. Mar. 19, 2018) (organization must establish "'inhibition of [its] daily operations" or "ongoing work").

VoteVets' allegations are wholly insufficient to meet this standard. With respect to the first requirement—concrete injury to organizational interests—VoteVets states only that it "has a distinct interest in the Administration's policies towards veterans," and in particular, expends resources advocating on behalf of its "belie[f] [that] the VA healthcare system should not, and must not, be privatized." Compl. ¶¶ 45-46. These allegations merely describe VoteVets' issue advocacy

7

on the subject of privatization; they do not demonstrate, or even suggest, that VoteVets' organizational *activities* are impaired because the Three Individuals offered advice to the Department without complying with FACA's procedural requirements.  *See Food & Water Watch*, 808 F.3d at 919 ("an organization's use of resources for . . . advocacy is not sufficient to give rise to an Article III injury").  Indeed, this would be true even if VoteVets disagreed with a specific policy recommendation offered by the Three Individuals and adopted by the Department, which VoteVets has not alleged.  *See, e.g.*, *New England Anti-Vivisection Soc'y*, 208 F. Supp. 3d at 166 ("complaining that the organization's ultimate goal has been made more difficult is not sufficient").

VoteVets also has not demonstrated that it has "expended resources to counteract" any specific harm resulting from the alleged FACA violations.  Although it alleges that it submitted a Freedom of Information Act ("FOIA") request for records regarding the role of "private individuals and pro-privatization advocacy groups . . . in influencing the . . . VA healthcare policy[,]" Compl. ¶ 45, this request appears to be simply another component of VoteVets' anti-privatization advocacy. There is nothing to suggest that the request was made to counteract any impairment to VoteVets activities resulting from the specific activities of the Three Individuals or that, if the Three Individuals had opened their records and meetings to the public, VoteVets would not have made the request anyway.  Indeed, the ProPublica article (the "ProPublica Article") on which VoteVets relies for the great majority of its factual allegations, and incorporates by reference in the Complaint, notes that "more private healthcare to vets was a signature promise of Trump's campaign" long before he "decided who should lead [that] effort."  Ex. A at 4.  Thus, VoteVets would presumably be seeking documents regarding the privatization efforts of the Department regardless of the activities of the Three Individuals.  *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*, No. 14-CV-953 (GK), 2016 WL 7376847, at *11 (D.D.C. Dec. 19, 2016)

(holding that "an organization does not suffer an injury in fact . . . unless [the agency's action] subjects the organization to operational costs *beyond those normally expended*" (emphasis added, citing *Food & Water Watch*, 808 F.3d at 920). VoteVets therefore has demonstrated neither a concrete injury resulting from the FACA violations it alleges, nor that it expended resources to counteract any such injury, as required to make out a claim of organizational standing in this Circuit.

### B.     VoteVets' Assertions of Procedural Violations Do Not Relieve It of Demonstrating a Concrete Injury.

The standing analysis is not different simply because VoteVets has asserted a violation of procedural rights under FACA. *See* Compl. ¶ 47 (alleging denial of VoteVets' purported "statutory right to review . . . documents and meeting minutes" and "participate in . . . meetings"). The D.C. Circuit has made clear that alleged procedural injuries do not themselves suffice for standing; rather, a plaintiff must demonstrate that the procedural violation "has resulted in an invasion of [the organization's] concrete and particularized interest." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1159-62 (D.C. Cir. 2005); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in *vacuo*—is insufficient to create Article III standing."). The D.C. Circuit recently applied this principle in a FACA case to hold that the plaintiff lacked standing to challenge the composition of a FACA committee because it failed to identify a "distinct risk to a particularized interest" resulting from the alleged FACA violation. *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827, 829 (D.C. Cir. 2016). The D.C. Circuit noted that although the advisory committee had submitted a report to the agency, the agency had not yet taken final action based on that report; therefore, the procedural violation alleged by the plaintiff

"by no means rendered the risk of eventual adverse [agency] action substantially probable or imminent." *Id.* at 830.

This holding applies with even greater force to VoteVets' claims because VoteVets fails to identify any specific policy that was even formally *proposed*, much less adopted, by the Department based on the advice or recommendations of the Three Individuals.  While VoteVets points to several initiatives discussed by the Three Individuals, such as a meeting with Johnson & Johnson regarding veteran suicide, calls with Apple executives about a mobile application for veterans, conversations with the American College of Surgeons ("ACS") about evaluating VA surgery programs, and a meeting with the American Association of Tissue Banks about tracking medical devices, it cites no facts suggesting that these discussions ever ripened into proposals for specific agency action.  Indeed, the ProPublica Article states that the Department *rejected* a proposal by Mr. Perlmutter to use private industry groups to evaluate healthcare delivery and "clashed" with the Three Individuals "over how to improve the VA's electronic record-keeping software."  Ex. A at 9.  ProPublica also reports that discussions with ACS "stalled after [then-Secretary] Shulkin was fired" and that the "VA finally killed the [mobile application] project because Moskowitz was the only one who supported it." *Id.* at 6-7.  VoteVets cannot stake a claim of Article III injury based on informal input regarding nascent proposals that never developed into specific departmental action.  *RJ Reynolds*, 810 F.3d at 832; *Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 184, 188 (holding that plaintiff lacked standing to challenge composition of FACA committee where, among other things, there was "no allegation that [the agency] took action based on" a committee recommendation).[1]

---

[1] VoteVets does allege that the Three Individuals were instrumental in the nomination and subsequent "firing" of former-Secretary David Shulkin, Compl. ¶¶ 41(a) & (i), but such actions were those of the President, not the Department.  Moreover, VoteVets has not alleged that either

**C.     VoteVets Cannot Rely on Informational Injury Where It Has Not Requested the Information It Seeks Nor Plausibly Alleged the Existence of a FACA Committee.**

VoteVets also does not state a claim of "informational standing." To establish such a theory, a plaintiff must show that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). A plaintiff asserting such a theory in a FACA case must demonstrate that it "has specifically requested, and been refused" the information that it seeks through its lawsuit. *Public Citizen*, 491 U.S. at 449; *see also id.* at 450 (noting that other citizens might make the same complaint "*after unsuccessfully demanding disclosure* under FACA" (emphasis added)); *Friends of Animals*, 828 F.3d at 992 (plaintiff must show that it "seeks and *is denied* specific agency records'" (emphasis added; citation, brackets, and quotation marks omitted)). VoteVets satisfies none of these requirements.

First, VoteVets does not claim that it ever "requested and [was] refused" any specific information to which it claims an entitlement under FACA. *Public Citizen*, 491 U.S. at 449. Although VoteVets alleges that it requested "records related to the role private individuals and pro-privatization advocacy groups have played in influencing the Administration's VA healthcare policy" and records related to the "firing of then-Secretary Shulkin," Compl. ¶ 45, VoteVets does not claim that it requested and was refused the documents it seeks in *this case*: namely, "records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents that have been made available to, or prepared for or by, the [Three Individuals]."

_____

the initial nomination of former Secretary Shulkin or his subsequent firing specifically advanced any privatization agenda to the detriment of VoteVets.

11

Compl. at Prayer for Relief ¶¶ 7-8.  Axiomatically, if no such records exist, or if VoteVets were to request such information and the Department were to provide all such records it possesses, VoteVets would not have suffered any informational injury.  That is why VoteVets cannot adequately allege an informational injury based on records that it has never even requested.

VoteVets also has not plausibly alleged that it was deprived of information that, on its interpretation, FACA required the Department to disclose.  Although a court must generally assume that a plaintiff's "view of the law wins the day" for purposes of informational standing, *Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 17-1354, 2017 WL 3028832, at *6 (D.D.C. July 18, 2017), the plausibility requirements of *Twombly* and *Iqbal* continue to apply.  Thus, in *Friends of Animals*, the D.C. Circuit did not adopt the plaintiff's implausible legal theory but instead held that the plaintiff lacked informational standing because, under the statutory framework at issue, no disclosure obligation was then in effect.  828 F.3d at 992.  Rather, the prerequisite steps necessary to trigger a disclosure obligation under the applicable statute had not yet occurred.  *Id.* Similarly here, FACA does not impose any disclosure requirements unless and until a FACA "advisory committee" comes into existence.  *See* 5 U.S.C. app. 2 § 10(b).  As discussed in Section II *infra,* VoteVets fails to plausibly allege the existence of such a committee, and therefore it may not invoke informational standing.

**D.**      **VoteVets Has Not Shown Causation or Redressability.**

VoteVets also has not satisfied the second and third prongs of standing.  Any injury that VoteVets might identify cannot be deemed fairly traceable to the Department when the Complaint provides no factual support to suggest that a "Mar-a-Lago Council" ever existed within the meaning of FACA.  And any alleged "injury" is not redressable because the Court cannot issue an

order that enjoins the meeting, or orders the disclosure of records, of private individuals that are not a FACA committee and are not parties to this case.  *See* Compl. at Prayer for Relief.

For all of the foregoing reasons, VoteVets fails to establish Article III standing to bring this case.

## II.   **The Complaint Should Be Dismissed for Failure to State a Violation of FACA.**

The Complaint also should be dismissed because it fails plausibly to allege the existence of an advisory committee subject to FACA.  Contrary to Plaintiff's suggestion, the requirements of FACA do not apply to any group that offers advice or exerts "influence" over federal agencies; they apply only to advisory committees "established" or "utilized" by an agency or the President. 5 U.S.C. app. 2 § 3(2).  These terms have been construed exceedingly narrowly.  In *Public Citizen*, the Supreme Court observed that "[r]ead unqualifiedly," FACA "would extend . . . to any group of two or more persons, or at least any formal organization, from which the President or an Executive agency seeks advice[,]" a result the Supreme Court determined was "absurd" and possibly unconstitutional.   491 U.S. at 453-54.   Thus, the Court "squarely rejected an expansive interpretation of the [statute]," and instead interpreted the terms "'established' and 'utilized' narrowly to prevent FACA from sweeping more broadly than the Congress intended."  *Byrd v. EPA*, 174 F.3d 239, 245 (D.C. Cir. 1999) (citing *Public Citizen*, 491 U.S. at 452).  The Complaint fails as a matter of law because it presses the interpretation "squarely rejected" in *Public Citizen* and in legions of cases since.

### A.   **The Complaint Does Not Plausibly Allege that Defendants "Established" a FACA Committee.**

"[A]n advisory panel is 'established' by an agency only if it is actually formed by the agency."  *Byrd*, 174 F.3d at 245; *accord Physicians Comm. for Responsible Med. v. Horinko*, 285 F. Supp. 2d 430, 445 (S.D.N.Y. 2003) ("*Physicians Comm.*") (citing cases).  This requirement

means what it says: communications and "collaboration" between an agency and a group is not enough to find that an agency "actually formed" an advisory committee. *See Physicians Comm.*, 285 F. Supp. 2d at 445-46 (being informed of efforts and attending certain meetings is insufficient; agency must be the "driving force behind" and "exert[] control over who attend[s] and what [is] discussed" by a committee). Thus, a FACA committee does not come into existence simply because certain individuals meet with "a changing slate of federal officials and private sector groups" for the "purpose of exchanging views on a variety of subjects." *Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1993) ("*AAPS*") (citing *Nader v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975)). Nor is a FACA committee "established" by an agency simply because private individuals attend meetings with federal officials on a specified topic. *See Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*, 92 F.3d 902, 906 (9th Cir. 1996) ("*Alcoa*") (holding that a series of meetings attended by a variety of stakeholders, including federal officials, regarding how an agency should comply with a court's ruling was not an advisory committee "established" by the government). Rather, "[i]n order to implicate FACA, the President, or his subordinates, must *create* an advisory group that has, in large measure, *an organized structure*, a *fixed membership*, and a *specific purpose*." *AAPS*, 997 F.2d at 914 (emphasis added). And because "an important factor in determining the presence of an advisory committee [is] the formality and structure of the group[,]" the D.C. Circuit has observed that "it is a rare case when a court holds that a particular group is a FACA advisory committee over the objection of the executive branch." *Id.*

Here, the Complaint fails to plead any specific facts indicating that a FACA committee consisting of the Three Individuals was "actually formed" by the Department. *Byrd*, 174 F.3d at 245. Instead, in the single paragraph related to the formation of the purported "Mar-a-Lago-

Council," the Complaint uses the passive voice, alleging that "[i]n January 2017, the Mar-a-Lago Council was established."  Compl. ¶¶ 27; *see also id.* ¶ 49 (pleading in conclusory terms that the Three Individuals operated as a "'council . . . established or utilized by' Defendant the VA").  Such conclusory assertions, bereft of any detail, plainly do not satisfy VoteVets' burden to allege *facts* plausibly demonstrating that the Department established a FACA committee.  *See Iqbal*, 556 U.S. at 678 (rejecting "naked assertion[s] devoid of 'further factual enhancement'"); *Washington Toxics Coal.*, 357 F. Supp. 2d at 1273 (rejecting allegation that task force was "established" by an agency where plaintiffs failed to "allege[] facts or point[] to evidence to substantiate their conclusory allegation").

Instead of pleading facts to support its contention that the Department "established" a "Mar-a-Lago Council," VoteVets includes footnotes to two news articles, suggesting that the support for its assertions lies there.  Compl. ¶¶ 27-28 & n.7-8.  However, even if it were proper for VoteVets to support a conclusory allegation with an unadorned citation to outside materials, neither of the cited articles plausibly suggests that the Department established a "Mar-a-Lago Council." The first, a CNBC transcript of a news conference on January 11, 2017, Compl. ¶ 27 n.7, simply contains a transcript of a press conference given by then-President-elect Trump in which he stated that "[w]e're going to be talking to a few people . . . to help" with veterans affairs and "we're going to set up a group" of "some of the great hospitals of the world . . . like the Cleveland Clinic [and] the Mayo Clinic," along with "their great doctors" and that "Ike Perlmutter has been very, very involved[.]"  Ex. B at 3-4.  The transcript does not so much as mention Mr. Sherman or Dr. Moskowitz, nor does it specify what Mr. Perlmutter was "very, very involved" in or how.  Nor does it say anything about the *Department* soliciting Mr. Perlmutter to help with veterans' affairs,

which is not surprising given that these comments were made before the President and his appointees were even sworn into office.[2]

More fundamentally, merely soliciting private sector viewpoints—even in a group format—does not give rise to a FACA committee.  Instead, to implicate FACA, a committee must have an "organized structure, a fixed membership, and a specific purpose," and be assembled by the government to render advice "*as a group*, and not as a collection of individuals."  *AAPS*, 997 F.2d at 914 (emphasis in original); *accord In re Cheney*, 406 F.3d at 730-31 (holding that groups were not subject to FACA where their meetings did not involve "any effort to achieve consensus" but merely "collect[ed] individual views"); *Freedom Watch, Inc. v. Obama*, 930 F. Supp. 2d 98, 101 (D.D.C. 2013) (noting that "where the President or an agency seeks to provide a mechanism and sounding board to test the pulse of the country by conferring directly or indirectly with widely disparate special interest groups and encourage an exchange of views, the resulting meetings are not subjected to the requirements of the FACA" (citation, quotation marks, ellipses and brackets omitted), *aff'd*, 559 F. App'x 1 (D.C. Cir. 2014); *see also* 41 C.F.R. § 102-3.40(e) (a group "assembled to provide individual advice" is not a committee subject to FACA).  Thus, while the President-elect's statement may indicate that he asked *one* of the Three Individuals—Mr. Perlmutter—and private hospitals and doctors to advise on certain unspecified matters, it hardly suggests that the *Department* convened Mr. Perlmutter, Mr. Sherman, and Dr. Moskowitz to advise on any specific matter *as a group*, as is VoteVets' burden to allege.[3]

---

[2] VoteVets brings this case against the Department, and therefore it must show that the Department, not the President, either "established or utilized" the Mar-a-Lago Council.  *See* Compl. ¶ 49.

[3] Indeed, several of the allegations in the Complaint refer to just one of the Three Individuals, not the group.  For example, VoteVets alleges that VA officials credited only Dr. Moskowitz—not the group—for efforts related to the Medical Device Registry Summit.  *See* Compl. ¶ 41(d).  Similarly, only Dr. Moskowiz is alleged to have been looped in to discussions between then-Secretary Shulkin and the American Association of Tissue Banks about tracking human tissue devices.

The second news report relied upon by VoteVets is the ProPublica Article. That article also does not suggest that the Department ever "actually formed" a FACA committee; indeed, it refutes that proposition. The article states that "[w]hen Trump asked . . . for help putting a government together, Perlmutter offered to be an outside adviser," and thereafter "*Perlmutter* enlisted the assistance of his friends Sherman and Moskowitz." Ex. A at 4 (emphasis added). This is also consistent with the "Statement by Ike Perlmutter, Bruce Moskowitz and Marc Sherman" that is reprinted in the paragraph 42 of the Complaint, in which the Three Individuals explained that "[w]e *offered* our counsel . . . to assist the President, Secretary and VA leadership . . . ." (emphasis added). Under binding Circuit law, a group is not a FACA committee if it is brought together by a private party. That is true even if the executive branch is indirectly responsible for the group's formation. *See, e.g.*, *Byrd*, 174 F.3d at 246-47 (expert panel was not "established" by agency where federal contractor selected its members and set its agenda pursuant to a government contract); *Food Chem. News v. Young*, 900 F.2d 328, 333 (D.C. Cir. 1990) (same); *People for Ethical Treatment of Animals, Inc. v. Barshefsky*, 925 F. Supp. 844, 848 (D.D.C. 1996) (working group was not "established" by agency where outside entities named representatives to the group); *see also* 41 C.F.R. § 102-3.40(d) (a group is not established by the executive branch if it is "created by non-Federal entities"). Thus, if Mr. Perlmutter enlisted the participation of Mr. Sherman and Dr. Moskowitz, as ProPublica states—or if the three men came together voluntarily—that is enough to demonstrate that the Department did *not* "establish" the group within the meaning of FACA.[4]

---

Compl. ¶ 41(h). Moreover, the Complaint lacks any factual allegations suggesting that the Three Individuals specifically sought to achieve consensus in providing advice to the Department. On the contrary, the Complaint cites an email in which Mr. Sherman stated that "'[w]e are always excited to provide *each of our thoughts* to you," as individuals. Compl. ¶ 42(h) (emphasis added).

[4] The Complaint further underscores the privately-initiated nature of the association by noting that when Mr. Sherman undertook discussions with ACS about evaluating VA surgery programs, it was

Even if it were proper for the Court to go beyond this clear refutation in VoteVets' own supporting materials that the Department "established" a "Mar-a-Lago Council," the remainder of the ProPublica Article is similarly unhelpful to VoteVets.  The article generally recounts the same allegations contained in the Complaint about various phone calls and meetings taking place between the Three Individuals, private sector representatives, and Department officials to suggest that, because the Three Individuals exerted "influence" over the Department, they acted as a "council."  *See* Ex. A at 2.  Not only is this not the law under FACA, the "more than twenty meetings" cited in the article and the Complaint plainly were not meetings in any formal sense of that phrase; rather, they consisted largely of informal encounters with an ever-changing cast of participants regarding different topics in different settings.  These "meetings" included, for example, a "brainstorming" session with healthcare executives, discussions of a mobile app with "senior officials from Apple, the United States Digital Service, and the Mayo Clinic," meals between the Three Individuals and the Secretary, a tour of a VA hospital, calls with VA contracting officials, and numerous telephone calls with different industry and private sector representatives, including but not limited to representatives from CVS Health, Johnson & Johnson's, Johns Hopkins University, Brigham Health, Connected Health and Partners Health Care, Biomedical Research & Education Foundation, Kaiser Permanente, the Cleveland Clinic, Mount Sinai Health System, the Miami Cancer Institute and ACS.  Compl. ¶ 35.

The ProPublica Article therefore suggests nothing more than that the Department received input regarding a variety of policy matters from numerous individuals and groups that sometimes included the Three Individuals.  Such allegations are insufficient to suggest the formation of a

---

*Mr. Sherman*, not the VA, that chose to loop in Mr. Perlmutter and Dr. Moskowitz to those discussions.  *See* Compl. ¶ 41(g).

FACA committee.  *See Nader*, 396 F. Supp. at 1234 (meeting between government officials and special interest groups for the purpose of exchanging views did not constitute an advisory committee because the groups "were not formally organized" and there was "little or no continuity" among participants and subject matter); *Huron Envt'l Activist League v. EPA*, 917 F. Supp. 34, 42 (D.D.C. 1996) (rejecting FACA challenge where group had neither a fixed membership nor a specific purpose and "simply d[id] not have the requisite formality and structure of an advisory committee").   For these reasons, VoteVets has not plausibly alleged that the Department "established" a "Mar-a-Lago Council" subject to FACA.

**B.**     **The Complaint Does not Plausibly Allege that Defendants "Utilized" the Three Individuals as a FACA Committee.**

An entity that is not "established" by the government may only be an advisory committee subject to FACA if it is "utilized" by the agency within the meaning of the statute.  5 U.S.C. app. 2 § 3(2).  Yet as with the word "established," the Supreme Court and the D.C. Circuit have given an extremely narrow and specific interpretation to the word "utilize."   In *Public Citizen*, after examining FACA's legislative history, the Supreme Court concluded that the phrase "or utilized" was added to FACA's definition of "advisory committee" "simply to clarify that FACA applies to advisory committees established by the Federal Government in a generous sense of that term, encompassing groups formed indirectly by quasi-public organizations . . . 'for' public agencies as well as 'by' such agencies themselves."   491 U.S. at 462.   The Court therefore rejected the argument that an agency "utilizes" a committee within the meaning of FACA if it "makes use of" the group's work product.  *Id.* at 452.  Instead, the Court looked to whether the committee was "*amenable to the strict management by agency officials*" and concluded that "an entity formed privately" "cannot easily be said to have been 'utilized by a department or agency in the same

manner as a Government-formed advisory committee.'" *Id.* at 457-58 (emphasis added, citation omitted).

Following *Public Citizen*, courts have repeatedly reaffirmed that the term "utilized" means more than simply "used." *See, e.g.*, *Wash. Legal Foundation v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994) (holding that "utilized" requires a showing that federal officials exercised "actual management or control of the advisory committee"—a "stringent standard"); *Food Chemical News*, 900 F.2d at 332-33 (holding that "utilized" refers to a group "so closely tied to an agency as to be amenable to 'strict management by agency officials'" (citation and quotation marks omitted)); *Alcoa*, 92 F.3d at 906 (concluding that groups were not "utilized" within meaning of FACA because they were not "subject to the management, much less strict management of federal agency officials"); *see also* 41 C.F.R. § 102-3.25 (a committee is "utilized" under FACA only "when the President or a Federal office or agency exercises actual management or control over its operation"). Thus, to demonstrate that the Department "utilized" the Three Individuals as a FACA committee, VoteVets must show that the Department exercised "actual management or control" over them. *Wash. Legal Foundation*, 17 F.3d at 1450.

The Complaint lacks *any* factual allegations indicating that the Department managed or controlled the Three Individuals. While it asserts that the Department participated in various calls and meetings with the Three Individuals and sometimes adopted their "advice and recommendations," those facts are not sufficient to infer that the Department managed or controlled the Three Individuals.[5] *See, e.g.*, *Byrd*, 174 F.3d at 246 ("participation by an agency . . . does not qualify as management and control" (citing *Wash. Legal Found.*, 17 F.3d at 1451);

---

[5] Nor is an allegation that the Department utilized the work product of the Three Individuals, Compl. ¶ 38, the same as alleging that it utilized those individuals as a committee.

*Physicians Comm.*, 285 F. Supp. 2d at 446 (rejecting FACA claims because "although EPA was informed about the progress of [a group's] discussions and even attended certain meetings, Plaintiffs have not established that EPA ever managed or controlled the timing, agenda, etc. of the discussions"); *Sofamor Danek Grp., Inc. v. Gaus*, 61 F.3d 929, 936 (D.C. Cir. 1995) (holding that committee was not subject to FACA notwithstanding the fact that the agency used its work product because the agency did not "establish[], manage[], or control[]" the committee); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 34–35 (D.D.C. 2010) (allegations that a group "provide[d] policy recommendations to the defendants" were insufficient to state a claim under FACA because they demonstrated only that the agency "'utilize[d]' the NACC in the familiar, colloquial sense" of that term, rather than managed or controlled the committee "*within the meaning of the FACA*" (emphasis added)). Thus, the D.C. Circuit and the Supreme Court have long "rejected the very claim that the plaintiffs are advancing here: that the FACA is triggered by an agency's mere use of a private group to obtain advice." *Huron*, 917 F. Supp. at 41 (citing *Public Citizen*, 491 U.S. at 457-58 and *Wash. Legal Foundation*, 17 F.3d at 1450).

The allegations in the Complaint are not only inadequate to meet VoteVets' pleading burden on this point; they directly refute it. Far from alleging that the Department managed or controlled the Three Individuals, the Complaint asserts quite the opposite: that the Three Individuals asserted influence *over the Department*. *See* Compl. ¶¶ 38-39 (alleging that the Three Individuals "bombarded VA officials with demands," "prodded" them to start new projects and "exert[ed] sweeping influence on the VA"). Because these allegations are fundamentally inconsistent with any suggestion that the Three Individuals were "amenable to strict management by agency officials," *Public Citizen*, 491 U.S. at 457-58, VoteVets has not plausibly alleged that the Department "utilized" the Three Individuals within the meaning of FACA.

\*     \*     \*     \*

At bottom, VoteVets' claims boil down to its assertion that the "Council has broad license to provide advice . . . on all manner of issues affecting" the Department and that "Defendants have utilized such advice and recommendations." Compl. ¶ 38. But as courts have repeatedly held, the "fact that a federal agency obtains information or advice from a committee, formally or informally, does not automatically classify the committee as a federal advisory committee subject to FACA regulations, nor does it indicate that the agency 'utilizes' the committee." *Wash. Toxics Coalition*, 357 F. Supp. 2d at 1273 (citation omitted). Thus, simply pairing allegations that the Three Individuals exerted influence over the Department with the conclusory allegation that the Department "established" or "utilized" the group does not make out a FACA claim.

VoteVets' failure to satisfy its pleading burden here is particularly glaring in light of the fact that VoteVets has access to hundreds of pages of documents pertaining to the role of the Three Individuals that were received by ProPublica in response to a FOIA request, as well as information contained in the ProPublica Article alleged to have been taken from "interviews with former administration officials[.]" Ex. A at 2. In some situations, where facts are peculiarly within the possession and control of the defendant," *Arista Records LLC v. DOE*, 604 F.3d 110, 120 (2d Cir. 2010), pleading on "information and belief" may be sufficient. But where, as here, a plaintiff has access to the relevant facts, such allegations, which are insufficient in any event, should be ignored for purposes of Rule 12. *Id.* at 120. The absence of any specific factual allegations supporting VoteVets' theory that the Three Individuals constituted a FACA committee not only speaks volumes given VoteVets' access to hundreds of pages of documents pertaining to its claims, it requires dismissal of the case for failure to state a violation of FACA.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Complaint be dismissed.

Dated: November 16, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

*/s/ Serena Orloff*
SERENA M. ORLOFF
California Bar No. 260888
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Room 12512
Washington, D.C. 20005
Telephone: (202) 305-0167
Fax: (202) 616-8470
Serena.M.Orloff@usdoj.gov

*Attorneys for Defendants*

23