**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

VOTEVETS ACTION FUND
2201 Wisconsin Ave. NW, #320
Washington, DC  20007,

       *Plaintiff*,

     v.

UNITED STATES DEPARTMENT OF
      VETERANS AFFAIRS
810 Vermont Ave. NW
Washington, DC  20420; and

ROBERT WILKIE, in his official capacity as
      Secretary of the United States
      Department of Veterans Affairs,
810 Vermont Ave. NW
Washington, DC  20420,

       *Defendants.*

No. 18-cv-1925

---

**<u>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

PARTIES ....................................................................................................................... 4

JURISDICTION AND VENUE ..................................................................................... 5

STATUTORY FRAMEWORK ........................................................................................ 5

    I.      The Federal Advisory Committee Act ................................................ 5

    II.     The VA's FACA Guide .......................................................................... 8

    III.    The Administrative Procedure Act ...................................................... 9

FACTS ........................................................................................................................... 9

    I.      The Mar-a-Lago Council Is Established and Holds Meetings Without Observance of Procedures Required by Law .................................................... 9

    II.     The Mar-a-Lago Council Advises the Department on Policy and Personnel Matters .................................................................................................... 20

        A.     Nomination of David Shulkin and other high-ranking VA officials ........ 21

        B.     Veteran suicide ............................................................................... 22

        C.     Mobile app development .................................................................. 23

        D.     Medical device registry ................................................................... 30

        E.     Cerner contract ................................................................................ 31

        F.     VA privatization .............................................................................. 33

        G.     Evaluation of VA surgery programs .................................................. 34

        H.     Tracking human tissue devices ......................................................... 35

        I.     Mental health ................................................................................... 35

        J.     Firing of David Shulkin ................................................................... 36

    III.    The Mar-a-Lago Council Operates Collectively, as a Committee ...................... 37

DEFENDANTS ARE VIOLATING THE FACA AND HARMING PLAINTIFF .................... 41

CLAIM FOR RELIEF .................................................................................................... 44

PRAYER FOR RELIEF ................................................................................................. 45

# INTRODUCTION

Plaintiff VoteVets Action Fund ("VoteVets") hereby files this First Amended Complaint against Defendants the United States Department of Veterans Affairs (the "Department" or the "VA") and Robert Wilkie, in his official capacity as the Secretary of the VA, and alleges as follows:

1.      President Trump and his Administration have made a practice of outsourcing decisionmaking on key issues of policy and government administration to private individuals, especially those who have business or social relationships with the President. These individuals have influenced, shaped, and dictated personnel and policy decisions made by the Administration. They have done so without being subjected to transparency requirements, conflict-of-interest screens, and other accountability rules required of public servants.

2.      In this case, the influential individuals are members of President Trump's social club, Mar-a-Lago; the usurped authority belongs to the United States Department of Veterans Affairs; and the victims are America's veterans. Since January 2017, the Department has repeatedly sought the advice of, and acted on the basis of collective recommendations from, Ike Perlmutter, Bruce Moskowitz, and Marc Sherman. These members of the "Mar-a-Lago Council" (or the "Council") are part of this prominent and powerful advisory committee not because of any particular expertise or relevant experience. They have none—no government experience, no U.S. military experience. Rather, each simply shares a financial relationship with President Trump as a dues-paying member of the Mar-a-Lago Club, a private golf and social club in Palm Beach, Florida, owned by the Trump Organization.

3.      Since its inception, the Mar-a-Lago Council has operated in secret. The Trump Administration made no public announcement upon the Council's creation, and despite the Council's extensive activities—including more than 25 meetings—the Administration has failed

to inform the public about the activities of a group empowered to make recommendations affecting the lives of millions of veterans.

4.　　While the full extent of the Mar-a-Lago Council's work remains hidden, the scope of its influence is now coming into view. Through frequent phone calls and meetings with top officials at the Department, including private meetings held inside the Mar-a-Lago Club, the Council's views are solicited, its advice considered, and its recommendations followed on a broad range of policy and personnel matters concerning veterans. This is particularly true with respect to the makeup of the VA's senior leadership. Upon the recommendation of the Mar-a-Lago Council, the VA has already made substantial changes to senior leadership posts, including the Secretary.

5.　　In addition to affecting personnel changes at prominent positions within the Department's leadership, the Mar-a-Lago Council has also advised the Department on, among other matters, building a national medical device registry at the VA, initiatives to prevent veteran suicide, the process for evaluating VA surgery programs, transforming the VA's digital records system, the development of a mobile application, and privatizing the healthcare services currently provided by the VA.

6.　　The Mar-a-Lago Council has admitted that it serves as an advisory committee for the VA. The Council has boasted about its role, even. In a statement that they issued jointly, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman said that they, together, "saw an opportunity to assist the Department of Veterans Affairs's leadership," and that they, together, "offered [their] counsel . . . to assist the President, Secretary, and VA leadership in . . . making the essential decisions . . . that affect our nation's veterans." "At all times," they said, they "offered [their] help and advice on a voluntary basis." They "were on emails and conference calls with senior

staff, and [then-]Secretary Shulkin referred on numerous occasions to his discussions with outside experts," including, presumably, them. They "discuss[ed] healthcare delivery and healthcare quality challenges facing the agency" and "were always willing to share [their] thoughts." Indeed, they "provided [their] advice and suggestions so that members of the Administration could consider [their suggestions] . . . to make [the Administration's] own decisions on actions to be taken."[1]

7.      According to their joint statement, the Mar-a-Lago Council is "proud of any contribution [it has] been able to make to improve the healthcare provided to the fine men and women who are served by the VA."[2] The VA, on the other hand, has thus far failed entirely to square the Council's power and influence with federal law.

8.      VoteVets, an advocate for veterans, sues to redress this unlawful and dangerous departure from required procedures. Plaintiff brings this action to enforce the Federal Advisory Committee Act, 5 U.S.C. app. 2 (the "FACA" or the "Act"). The FACA was enacted in 1972 to curb the executive branch's reliance on superfluous and secretive "advisory committees": ad hoc, non-federal bodies that nonetheless counseled governmental decisionmakers on significant swaths of national policy. Prior to the FACA, special interests had used these committees—and the associated veneer of governmental legitimacy—to drive federal decisionmaking outside the light of public scrutiny, participation, and debate.

9.      Since Plaintiff filed its initial complaint, the VA has released additional documents pertaining to the Mar-a-Lago Council in response to Freedom of Information Act

---

[1] *Statement by Ike Perlmutter, Bruce Moskowitz and Marc Sherman to ProPublica* (July 18-20, 2018), https://www.documentcloud.org/documents/4704885-Full-Statement-by-Perlmutter-Moskowitz-and-Sherman.html [hereinafter Mar-a-Lago Council Statement].

[2] *Id.*

("FOIA") requests. These documents reveal new information concerning the Council's activities and influence, including new details about how the VA relied on the Council to drive the development of a mobile application, and organized the Council's collective review of the VA's $10 billion contract with the Cerner Corporation to replace the VA's electronic health record system. Plaintiff thus files this amended complaint.

10.     Yet because Defendants continue to flout the FACA's important transparency requirements, the full extent of the Mar-a-Lago Council's influence, activities, and motives remains unknown. Consequently, veterans, their families, and other affected members of the public, like Plaintiff, have almost no insight into whether or how the Council has given consideration to issues critical to veterans, including the privatization of VA healthcare services. Moreover, the lack of transparency leaves the affected public with no view at all into what, if any, precautions have been taken to ensure that members of the Mar-a-Lago Council provide advice and recommendations out of concern for the public good and not their personal profit. For example, as detailed below, one of the Council's projects for the VA concerned a mobile application, and one of its priorities for that project seemed to lay the foundation for the VA adopting a propriety application of Mr. Moskowitz's. The public deserves a window onto such transactions, and the FACA requires it. In addition, when the government fails to adhere to the FACA's requirements, public confidence in the government as a whole is diminished. Where, as here, that failure relates to the provision of critical benefits to America's veterans, the consequences are particularly stark.

**PARTIES**

11.     Plaintiff VoteVets, also known as VoteVets.org, is a not-for-profit organization incorporated under the laws of the District of Columbia. VoteVets has nearly 500,000 supporters with whom it regularly communicates about issues concerning veterans, including VA health

4

care, veterans' employment, and veterans' education benefits. VoteVets' mission is to coordinate

and execute public issue campaigns on topics such as these to ensure that the voices of

America's veterans are heard regarding matters of public policy.

12. Defendant the United States Department of Veterans Affairs is a federal agency

within the meaning of the FACA, 5 U.S.C. app. 2 § 3(3), and of the Administrative Procedure

Act (the "APA"), 5 U.S.C. § 551(1), that is headquartered in Washington, D.C.

13. Defendant Robert Wilkie is sued in his official capacity as Secretary of the United

States Department of Veterans Affairs.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because

this action arises under federal law, specifically the FACA, 5 U.S.C. app. 2, and the APA, 5

U.S.C. §§ 702, 706.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because

Defendants are an agency and an officer of the United States and because Defendant the VA

resides in Washington, D.C.

## STATUTORY FRAMEWORK

### I. The Federal Advisory Committee Act

16. A sunshine law, the Federal Advisory Committee Act requires transparency and

permits public participation when the executive branch establishes or uses non-federal bodies for

the purpose of seeking advice and generating policy. When passing the FACA, Congress

explained that "[o]ne of the great dangers in the unregulated use of advisory committees is that

special interest groups may use their membership on such bodies to promote their private

concerns," citing as an example an Industrial Waste Committee where "only representatives of

industry were present[,]" and "[n]o representatives of conservation, environment, clean water,

consumer, or other public interest groups were present." H.R. Rep. No. 92-1017, at 6 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3496.

17.     The FACA defines an "advisory committee" as

any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup . . . which is

> (A) established by statute or reorganization plan, or
> (B) established or utilized by the President, or
> (C) established or utilized by one or more agencies,

in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (i) any committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government, and (ii) any committee that is created by the National Academy of Sciences or the National Academy of Public Administration.

5 U.S.C. app. 2 § 3(2). Advisory committees are subject to the FACA's requirements unless specifically exempted by statute, *see id.* § 4(a); unless established by the Central Intelligence Agency, the Federal Reserve, or the Office of the Director of National Intelligence, *id.* § 4(b); or unless they are purely "local civic group[s]" or "[s]tate or local committee[s]," *id.* § 4(c). None of these exceptions applies here.

18.     Among other things, the FACA requires: (1) before acting or meeting, an advisory committee must file a charter with the Administrator of the General Services Administration ("GSA") or the head of the agency that created the committee; (2) the make-up of the committee must "be fairly balanced in terms of the points of view represented and the functions to be performed"; (3) the charter must contain appropriate provisions to "assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment"; (4) all meetings must be open to the public; (5) notice of each meeting must be published in the Federal Register; (6) all interested persons must be

allowed to attend, appear before, or file statements with the advisory committee; (7) all records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents made available to or prepared for or by the advisory committee must be available to the public, and (8) detailed minutes of each meeting must be kept. *Id.* §§ 5(b)(2)-(3), 5(c), 9(c), 10(a)(1)-(3), 10(b)-(c).

19.    As specifically relevant here, the FACA requires that, before an advisory committee "meet[s] or take[s] any action," a charter for the committee, containing specified information, must be filed with the GSA Administrator, "in the case of Presidential advisory committees, or . . . with the head of the agency to whom any advisory committee reports and with the standing committees of the Senate and of the House of Representatives having legislative jurisdiction of such agency." *Id.* § 9(c).

20.    The FACA also requires advisory committees to facilitate public comment and participation. Thus, an advisory committee must provide "timely notice" of its meetings to the public, *id.* § 10(a)(2), and must allow interested persons to "attend, appear before, or file statements with [the] committee, subject to such reasonable rules or regulations as the Administrator [of the GSA] may prescribe," *id.* § 10(a)(3). The Administrator of the GSA has implemented these statutory obligations by requiring advisory committees to publish notice of their meetings "at least 15 calendar days prior" to the meetings, unless documented and "exceptional circumstances" require otherwise.  41 C.F.R. § 102-3.150. All meetings must be held "in a manner or place reasonably accessible to the public" and allow "[a]ny member of the public [to] speak to or otherwise address the advisory committee if the agency's guidelines so permit." *Id.* § 102-3.140(a), (d).

21.     In addition, the FACA requires publication of "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for" the committee. 5 U.S.C. app. 2 § 10(b). These materials must be released well before the relevant advisory committee meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992).

22.     Finally, the FACA provides that "[d]etailed minutes," containing specified information, "of each meeting of each advisory committee shall be kept." 5 U.S.C. app. 2 § 10(c).

## II.     The VA's FACA Guide

23.     The VA publishes a VA Advisory Committee Management Guide that expands on agency expectations "to ensure that VA Federal Advisory Committees carry out their responsibilities under FACA."[3]

24.     In its Guide, the VA reiterates that when the FACA was enacted, Congress determined that "[n]ew committees should be established only when determined to be essential," that "[t]here should be standard and uniform procedures governing the operation of committees," that "Congress and the public should be kept informed of the number, purpose, membership activities, and costs of advisory committees," and that "[t]he function of advisory committees should be advisory only."[4]

---

[3] Department of Veterans Affairs, *Advisory Committee Management Guide* 1 (Aug. 2017), https://www.va.gov/ADVISORY/docs/ACMO-2017ACMOGuidesignedbyCoSVA.pdf.
[4] *Id.* at 3.

25.     The Guide emphasizes that "[n]o advisory committee may meet or take any action until a charter has been filed by VA's [Committee Management Officer] in accordance with FACA."[5]

26.     The Guide notes that

One of VA's principal objectives in managing its advisory committees is to ensure that committee members appropriately reflect the diversity of American society and the Veteran population. In the selection of members for discretionary committees, VA is required to consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature of the advisory committee. Committees requiring technical expertise should include persons with demonstrated professional or personal qualifications and experience relevant to the functions and tasks to be performed.[6]

## III.    The Administrative Procedure Act

27.     The APA permits judicial review by persons "suffering legal wrong because of agency action, or adversely aggrieved by agency action." 5 U.S.C. § 702; *see id.* §§ 702-704. Under the APA, a "reviewing court . . . shall compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law," *id.* § 706(2)(A).

## FACTS

## I.    The Mar-a-Lago Council Is Established and Holds Meetings Without Observance of Procedures Required by Law

28.     In January 2017, the Mar-a-Lago Council was created to advise the VA on policy issues affecting veterans and the administration of the Department or, in the words of then

---

[5] *Id.* at 10.
[6] *Id.* at 18.

President-elect Trump, "to help" the Secretary of Veterans Affairs "straighten out the VA."[7]

Indeed, as a senior VA official later said in response to Council recommendations, "The VA staff

has limited knowledge and experience, which is why you . . . are so important to help move the

VA forward."[8]

29.     President Trump named Isaac "Ike" Perlmutter to lead the Council, and Bruce

Moskowitz and Marc Sherman to serve on the Council.[9]

30.     Mr. Perlmutter is the Chief Executive Officer for the entertainment and

production company Marvel Entertainment. Mr. Moskowitz is a doctor practicing in West Palm

Beach, Florida, and the founder of the Biomedical Research and Education Foundation. Mr.

Sherman is a managing director who specializes in financial fraud and white-collar investigations

with the consulting firm Alvarez & Marsal.[10]

31.     While none of these men have notable experience with issues affecting veterans,

all three do maintain personal relationships with President Trump that were formed or cemented

through their affiliation with the President's golf and social club, the Mar-a-Lago Club, where

they are all members.

---

[7] Natalia Wojcik et al., *Read the Transcript From Trump's News Conference*, CNBC, Jan. 11, 2017, https://www.cnbc.com/2017/01/11/transcript-of-president-elect-donald-j-trumps-news-conference.html.

[8] Department of Veterans Affairs, FOIA Service, VA Senior Leadership Emails, https://www.oprm.va.gov/foia/foia_library.aspx (under heading "Senior Leadership Emails/Travel"), DSTBCSto62218Redacted at 111 [hereinafter VA Senior Leadership Emails].

[9] *See* Isaac Arnsdorf, *The Shadow Rulers of the VA*, ProPublica, Aug. 7, 2018, https://www.propublica.org/article/ike-perlmutter-bruce-moskowitz-marc-sherman-shadow-rulers-of-the-va.

[10] *Id.*

32.     In the words of all three Council members: "When we saw an opportunity to assist the Department of Veterans Affairs's leadership in addressing some of the most intractable problems of the VA, we considered it an honor and a privilege to do so."[11]

33.     On information and belief, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman have not been hired or appointed to formal government positions by the President, the Department, or any other agency within the federal government.[12]

34.     On information and belief, no charter for the Council has been made or filed.

35.     On the VA's website, the VA discloses 28 advisory committees.[13] The Mar-a-Lago Council is not listed among them.

36.     Given that the Council has operated in secret, the full scope of its activities are unknown, except to Defendants. However, publicly available information reveals that, as of the date of this filing, the Council has held more than 25 meetings, and has maintained a close working relationship with Defendants. Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman all participated in at least ten of these meetings.

         a.  On December 28, 2016, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman convened a council of healthcare executives to meet with President-elect Trump. According to Sean Spicer, Mr. Trump's spokesman at the time, the

---

[11] Mar-a-Lago Council Statement, *supra* note 1.

[12] Arnsdorf, *supra* note 9.

[13] Department of Veterans Affairs, Advisory Committee Management Office, https://www.va.gov/ADVISORY/Advisory_Committees.asp.

meeting included "lots of brainstorming on how to improve and reform [the Department of Veterans Affairs]."[14]

b. On January 12, 2017, during a press conference, President-elect Trump said Mr. Perlmutter was "very, very involved" in advising his team on veterans affairs issues.[15] Following the press conference, a "source with knowledge of the matter confirmed" that Mr. Perlmutter would "take on an informal, though 'significant,' advisory role in Trump's administration with respect to veterans affairs."[16]

c. On or around February 7, 2017, the Mar-a-Lago Council met in person for the first time since President Trump took office.[17] Then-Secretary of Veterans Affairs David Shulkin flew to Mar-a-Lago for the meeting with the Council, marking the VA's establishment of the Council. On information and belief, Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

d. Writing to then-Secretary Shulkin by email on February 7, 2017, under the subject line "Group meeting," the Council outlined the pace at which they would update Mr. Shulkin on the Council's recommendations and progress,

---

[14] Priyanka Dayal McCluskey, *Partners HealthCare's CEO Talks Obamacare, VA with Trump*, Bos. Globe, Dec. 28, 2016, https://www.bostonglobe.com/business/2016/12/28/trump-meets-with-partners-chief-executive-fla/gwjDtaS4xrGLIU0HKUK4uK/story.html.

[15] Wojcik et al., *supra* note 7.

[16] Tim Huddleston Jr., *Why Donald Trump Gave Marvel's CEO a Shout-Out in His Press Conference*, Fortune, Jan. 11, 2017, http://fortune.com/2017/01/11/donald-trump-marvel-ceo-ike-perlmutter/.

[17] *The Mar-a-Lago Crowd Documents*, ProPublica, at DS-Moskowitz 1 Att 1-2_Redacted_2, https://www.propublica.org/datastore/dataset/the-mar-a-lago-crowd-documents [hereinafter ProPublica Documents]; *see* Arnsdorf, *supra* note 9.

saying they would "not need to meet in person monthly, but meet face to face only when necessary" along with "conference calls at a convenient time."[18] The Council also expressed its excitement that their role would afford them the opportunity to "transition from vision to reality" with respect to federal veterans policy.[19]

e.  On February 15, 2017, the Mar-a-Lago Council held a 30-minute call with then-Secretary Shulkin.[20]

f.  On February 23, 2017, the Mar-a-Lago Council held a 45-minute call with then-Secretary Shulkin and the President and CEO of CVS Health. Mr. Sherman was unable to participate on this call, but Mr. Moskowitz assured the group that he would update him following the call.[21]

g.  On February 28, 2017, the Mar-a-Lago Council held a one-hour call to discuss VA Technology Transfer with then-Secretary Shulkin and a medical technology transfer authority.[22] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

h.  On March 3, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin and senior officials from Apple, the United States Digital

---

[18] *Id.*

[19] *Id.*

[20] *Id.* at DS Sherman 1-1_Redacted.

[21] *Id.* at DS Sherman 2-3_Redacted.

[22] *Id.* at DS Perlmutter 1-1_Redacted.

Service, and the Mayo Clinic.[23] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

i.  On March 4, 2017, the Mar-a-Lago Council held a 30-minute call with then-Secretary Shulkin to review the agenda for an upcoming meeting with President Trump.[24]

j.  On April 11, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin to discuss issues relating to fraud and abuse within the VA system.[25]

k.  On April 12, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin and the Chairman and CEO of Kaiser Foundation Health Plan.[26] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

l.  On April 17, 2017, the Mar-a-Lago Council held a 30-minute call with Johnson & Johnson's executive staff as a follow-up to the February 28, 2017 VA Technology Transfer call.[27] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

m. On April 17, 2017, the Mar-a-Lago Council attended a one-hour dinner with then-Secretary Shulkin.[28] Mr. Sherman attended for the Council.

---

[23] *Id.* at DS Perlmutter 2 att 1-1_Redacted.
[24] *Id.* at DS Perlmutter 3-2_Redacted.
[25] *Id.* at DS Sherman 4-1_Redacted.
[26] *Id.* at DS Sherman 5-2_Redacted.
[27] *Id.* at DS Sherman 6-2_Redacted.
[28] *Id.* at DS Sherman 7-1_Redacted.

n.  On April 27, 2017, the Mar-a-Lago Council attended an hour-and-a-half breakfast with then-Secretary Shulkin.[29]

o.  On April 27, 2017, the Mar-a-Lago Council attended a two-hour tour of the Walter Reed Army Medical Center.[30] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

p.  Also on April 27, 2017, the Mar-a-Lago Council met with Darin Selnick, senior advisor to then-Secretary Shulkin.[31]

q.  On May 18, 2017, the Mar-a-Lago Council participated in a 30-minute conference call with Mr. Selnick. Council participants included Mr. Moskowitz and Mr. Sherman. As described below, the group discussed an effort by the VA to work with Apple and prominent healthcare centers to develop a mobile application (or "mobile app") for veterans.[32]

r.  The Mar-a-Lago Council held another call with Mr. Selnick on May 23, 2017. Mr. Moskowitz and Mr. Sherman participated for the Council, and individuals from Apple also joined to receive further guidance in preparation for "the upcoming VA/Centers/Apple call."[33]

---

[29] *Id.* at DS Perlmutter 4-1_Redacted.

[30] *Id.* at DS Perlmutter 5-5a-2_Redacted.

[31] VA Senior Leadership Emails, *supra* note 8, DSTBCSto62218Redacted at 1.

[32] *Id.* at 56, 63.

[33] *Id.* at 130, 155-157.

s.  Also on May 23, 2017, the Mar-a-Lago Council held a 30-minute call with then-Secretary Shulkin and then-acting Under Secretary for Health, Dr. Poonam Alaigh.[34]

t.  On May 30, 2017, the Mar-a-Lago Council held a 30-minute call with then-Secretary Shulkin and, on information and belief, Dr. Alaigh.[35]

u.  Also on May 30, 2017, the Mar-a-Lago Council attended an hour-and-a-half dinner with then-Secretary Shulkin.[36] Mr. Sherman attended for the Council.

v.  On June 14, 2017, the Mar-a-Lago Council held an hour-and-a-half call with then-Secretary Shulkin and staff at the VA, Apple, the Mayo Clinic, Johns Hopkins University, Brigham Health, Connected Health and Partners Health Care, Biomedical Research & Education Foundation, Kaiser Permanente, the Cleveland Clinic, and Mount Sinai Health System. Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz. The meeting covered numerous discrete topics but broadly focused on the VA's electronic health and medical records modernization effort, including the VA's plan to build a mobile app, described as a "Digital Veteran Platform," with the assistance of Apple and the experts from national healthcare centers.[37]

---

[34] VA Senior Leadership Emails, *supra* note 8, CalendarsDJSwBMIPMSRedacted at 18.

[35] *Id.* at 18-22.

[36] *Id.* at 61.

[37] *Id.* at 39-47.

w. On September 1, 2017, the Mar-a-Lago Council held a 30-minute call with then-Secretary Shulkin.[38] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

x. On October 4, 2017, the Mar-a-Lago Council held a 45-minute meeting at the White House with then-Secretary Shulkin and various officials from the White House and VA.[39] Council participants included Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz.

y. On or about December 6, 2017, the Mar-a-Lago Council held a lunch meeting with then-Secretary Shulkin and discussed plans for evaluating VA surgery programs, and "CIO and HR candidates."[40] Mr. Sherman attended for the Council.

z. On December 18, 2017, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin, the CEO of the Miami Cancer Institute, and two executives from the American College of Surgeons.[41] Mr. Sherman participated in the call; Mr. Perlmutter and Mr. Moskowitz were included in the correspondence scheduling the call.

aa. On December 31, 2017, the Mar-a-Lago Council met by telephone with then-Secretary Shulkin to discuss matters related to the VA's contract with Cerner Corp. to modernize the VA's electronic health records, discussed further below, and specifically to the Council's recommendation that VA rely on

---

[38] ProPublica Documents, *supra* note 17, at DS Sherman 9-2_Redacted.
[39] VA Senior Leadership Emails, *supra* note 8, CalendarsDJSwBMIPMSRedacted at 26-29.
[40] *Id.* at 71.
[41] ProPublica Documents, *supra* note 17, at DS Sherman 10-7_Redacted.

outside interoperability experts.[42] Mr. Moskowitz represented the Council on that call.

bb. On information and belief, the Mar-a-Lago Council met by telephone with then-Secretary Shulkin on January 2, 2018, to relay problems the Council had identified with a VA plan to use contracts formed pursuant to the Intergovernmental Personnel Act to recruit experts from academic centers to consult on electronic medical record interoperability, including in connection with the Cerner contract.[43] The Council was represented on that call by Mr. Moskowitz.

cc. On January 29, 2018, the Mar-a-Lago Council held a one-hour call with then-Secretary Shulkin.[44]

dd. On February 27, 2018, the Mar-a-Lago Council held a three-hour meeting with then-Secretary Shulkin at the Mar-a-Lago Club.[45] On information and belief, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman were all present. On information and belief, Peter O'Rourke—who had recently been named Chief of Staff at the VA, and who would go on to serve as Acting Secretary—was also present at this meeting.[46] In an email exchange the following day, on February 28, 2018, Mr. O'Rourke confirmed that the terms of the Mar-a-Lago Council's influence would not change on his watch. He promised Mr.

---

[42] VA Senior Leadership Emails, *supra* note 8, DJSemailsRedacted at 84-85.

[43] *Id.*

[44] ProPublica Documents, *supra* note 17, at DS Moskowitz 6-1_Redacted.

[45] VA Senior Leadership Emails, *supra* note 8, CalendarsDJSwBMIPMSRedacted at 48-49.

[46] VA Senior Leadership Emails, *supra* note 8, PORemailsto5318Redacted at 32.

Perlmutter, Mr. Moskowitz, and Mr. Sherman that he would "protect our conversations from yesterday and as instructed by the Secretary last night, not discuss the content with any of the individuals what were mentioned."[47]

ee. On March 9, 2018, the Mar-a-Lago Council met with Mr. O'Rourke to further discuss Apple's involvement in the creation of the mobile app.[48] Mr. Moskowitz represented the Council on the call.

ff. Robert Wilkie was named the Acting Secretary of the VA by President Trump on March 28, 2018.[49] On his first day in that role, Acting Secretary Wilkie arrived to his office to find Mr. Sherman waiting for him there.[50]

gg. On April 2, 2018, the Mar-a-Lago Council held a 30-minute meeting with then-acting Secretary Wilkie.[51]

hh. On April 20, 2018, then-acting Secretary Wilkie met with the Council at the Mar-a-Lago Club.[52]

ii. From November 2017 to at least April 2018, the Council participated "on two or three monthly calls" with the VA contracting team responsible for implementing a ten-year project to reform the VA's digital records system.[53]

---

[47] *Id.*

[48] *Id.* at 52.

[49] *See* Donald J. Trump (@readDonaldTrump), Twitter (2:31 PM, Mar. 28, 2018), https://twitter.com/realDonaldTrump/status/979108846408003584.

[50] Arnsdorf, *supra* note 9.

[51] ProPublica Documents, *supra* note 17, at RW Sherman 1 (Acting Sec)-1_Redacted.

[52] ProPublica Documents, *supra* note 17, at RW Itinerary-Fayetteville, NC-WPB, FL 04-17-20-2018-8_Redacted.

[53] Arthur Allen, *'Who the Hell Is This Person?' Trump's Mar-a-Lago Pal Stymies VA Project*, Politico, Apr. 30, 2018, https://www.politico.com/story/2018/04/30/trump-doctor-health-technology-508297.

37.     Defendants and the Council failed to publish notices of these meetings in the Federal Register. Nor have Defendants or the Council made available any material that the Council has generated or received in connection with these meetings or with its work more generally. Finally, there is no record that Defendants and the Council have kept or published minutes of the Council's many meetings.

38.     As further described below, had notices of the above meetings been published and had the meetings been open to the public, as required by the FACA, VoteVets would have mobilized efforts to ensure that its views on privatization and other issues affecting veterans were well-represented at the meetings.

## II.     The Mar-a-Lago Council Advises the Department on Policy and Personnel Matters

39.     The Council has broad license to provide advice and recommendations to the VA—and through the VA, President Trump—on all manner of issues affecting veterans and the administration of the Department, and Defendants have utilized such advice and recommendations.[54] Indeed, it seems the Council "is exerting sweeping influence on the VA from Mar-a-Lago."[55]

40.     According to public reports, the Council "[s]poke with VA officials daily," "review[ed] all manner of policy and personnel decisions," "bombarded VA officials with demands," and "prodded the VA to start new programs," and "officials travelled to Mar-a-Lago at taxpayer expense to hear [the Council's] views."[56] Indeed, in a statement by Mr. Perlmutter,

---

[54] *See* Arnsdorf, *supra* note 9.

[55] *Id.*

[56] *Id.*

Mr. Sherman, and Mr. Moskowitz, the Council admitted that "[s]ince late 2016, we have shared our views and perspectives on a number of occasions with VA leadership."[57]

41. Officials within the Department have confirmed the extent of the Mar-a-Lago Council's influence. Discussing a ten-year project to reform the VA's digital records system, one Department official said, "We just had to make the Mar-a-Lago [Council] comfortable with the deal. . . . They have someone's ear. Power and influence are power and influence."[58] A former Department official went further, saying "[e]verything needs to be run by [the Mar-a-Lago Council]" because "[t]hey view themselves as making the decisions."[59]

42. Given that the Council has operated outside of public view, the full scope of its influence on policy matters is unknown, except to Defendants. However, publicly available information reveals that the Council is working to provide advice and recommendations with regard to, at a minimum, the following:

**A.      Nomination of David Shulkin and other high-ranking VA officials**

43. On January 11, 2017, President Trump nominated David Shulkin to serve as Secretary of the VA. The nomination was made, in part, on the recommendation of the Mar-a-Lago Council.[60]

44. On July 16, 2018, the Mar-a-Lago Council sought to influence the VA's hiring process for an Under Secretary post. Mr. Moskowitz emailed Peter O'Rourke, then the acting

---

[57] Mar-a-Lago Council Statement, *supra* note 1.

[58] Allen, *supra* note 51.

[59] Arnsdorf, *supra* note 9 (quoting a former VA official).

[60] *Id.*

Secretary, to introduce him to a candidate over email and to "make sure his application is received."[61]

## B.    Veteran suicide

45.     Beginning in February 2017, the Council convened a series of conference calls with executives at Johnson & Johnson, leading to the development of a public awareness campaign about veteran suicide.[62] The Council and the Department planned to promote the campaign by ringing the closing bell at the New York Stock Exchange. According to public reports, "[t]he event also turned into a promotional opportunity for Perlmutter's company." Marvel, its parent company, Disney, and Johnson & Johnson sponsored the event, where "Shulkin rang the closing bell standing near a preening and flexing Captain America, with Spider-Man waving from the trading pit, and Marvel swag was distributed to some of the attendees."[63]

---

[61] VA Senior Leadership Emails, *supra* note 8, PORemailsto9618Redacted at 2.

[62] Arnsdorf, *supra* note 9.

[63] *Id.*

### C.  Mobile app development

46.     The Council recommended that Apple and the VA, in consultation with executives at prominent healthcare centers, develop a mobile accessible, digital platform that would allow veterans to, among other things, find nearby medical services and easily access health records. The mobile app was to be partially built from an existing application built by Mr. Moskowitz. In pursuit of this goal, the Council facilitated a series of calls with senior executives from the VA and Apple to  implement the Council's recommendations.

47.     On April 27, 2017, as noted above, the Mar-a-Lago Council met with Mr. Selnick, senior advisor to then-Secretary Shulkin.[64] Mr. Selnick served as the Mar-a-Lago Council's primary point of contact with the VA for the mobile application project. Having established a point of contact, the Mar-a-Lago Council began laying the ground work for the mobile app project and providing advice and recommendations regarding its development. Writing to Mr. Selnick on May 2, 2017, Mr. Moskowitz expressed the Council's view that making "portable health records available to Veterans" should be the "number one priority with Apple" for the development of the mobile app, and even more so if the VA implements a "choice" program that would result in increased privatization of veterans' health services.[65] Aside from that over-arching view, Mr. Moskowitz also began articulating some of the Council's specific goals for the mobile app, which were later adopted by the VA.[66]

48.     Mr. Selnick wrote back on May 3, 2017, alerting the Council to the fact that VA officials "have just completed and signed the [non-disclosure agreement] with Apple." Mr. Selnick recommended "that we set up a conference call with Apple to discuss the path forward

---

[64] VA Senior Leadership Emails, *supra* note 8, DSTBCSto62218Redacted at 1.
[65] *Id.* at 2.
[66] *Id.* at 2-3.

and partnership of VA, Apple and the 5 [healthcare] Centers," and further recommended a call with Mar-a-Lago Council members Mr. Moskowitz and Mr. Sherman to bring them up to speed on the VA's engagement thus far with Apple.[67]

49.     On May 8, 2017, Mr. Moskowitz emailed individuals from the five academic health centers involved with developing the mobile app to preview the goals, as the Council saw them, for the project.[68] Around that time, Mr. Moskowitz and Mr. Sherman, representing the Council, exchanged emails and had a phone call with Mr. Selnick.[69] Mr. Selnick conveyed to Mr. Moskowitz and Mr. Sherman that "the three broad areas they were looking to focus on" included "Credentialling/authenticating"; "Patient mediated data exchange and analytics"; and "Development of a research type app related to suicide prevention."[70] Mr. Moskowitz responded that "[t]hese are good areas but not the emergency ones which my group of experts have identified," and referred Mr. Selnick back to his earlier email outlining priorities as the Council saw them.[71] Mr. Selnick deferred to the Council's recommendations, responding, "[g]ot it, looking forward to discussing."[72]

50.     On May 9, 2017, Mr. Moskowitz presented several of the Council's recommendations for the mobile app's features. These recommendations came in the form of a four part "agenda" for the project, with each agenda item representing a distinct feature the Council recommended the mobile app include. In particular, the Council recommended that the app provide a user the ability to: (i) locate the closest facilities for certain critical medical

---

[67] *Id.* at 3.

[68] *Id.* at 18-19.

[69] *Id.* at 9-12.

[70] *Id.* at 21.

[71] *Id.* at 24; *see also id.* at 26-27.

[72] VA Senior Leadership Emails, *supra* note 8, DSTBCSto62218Redacted at 28.

services; (ii) download medical records from both VA healthcare facilities and private healthcare facilities and also guard against the ordering of duplicative services; (iii) track "medication compliance" particularly for opioids; and (iv) track patient behavior with respect to taking prescription medication at home and scheduling follow-up visits.[73] Significantly, the Council's recommendations laid a foundation for the VA to substantially adapt from a proprietary application Mr. Moskowitz developed called the Emergency Medical Center Locator.[74]

51.     The Council continued to refine these recommendations in the lead up to a call with Apple. As Mr. Moskowitz confirmed in a May 11, 2017 email to then-Secretary Shulkin and Mr. Selnick: "We can set up the call in 10 days[.] [M]y group is working on parts of [the] agenda."[75] During this period, the Council continued to engage in a back-and-forth about the agenda for the upcoming Apple call, and the goals for the mobile application project expressed therein.[76] The Council's role was clear: Mr. Selnick referred to Council members as "top principles," along with then-Secretary Shulkin,[77] and acknowledged the extent to which the VA intended to rely on the Council's recommendations, stating that "[t]he VA staff has limited knowledge and experience, which is why you and the Centers are so important to help the VA move forward."[78] The priorities identified by the Mar-a-Lago Council were ultimately adopted

---

[73] *Id.* at 32.
[74] *Id.* at 190.
[75] *Id.* at 50.
[76] *Id.* at 61-62, 73-74, 111-112.
[77] *Id.* at 203.
[78] *Id.* at 111.

and finalized as the four initiatives that the VA and Apple would work to achieve for the mobile app.[79]

52.     As discussed above, moving toward the large June 14, 2017 meeting, the Mar-a-Lago Council continued to meet periodically with Mr. Selnick. On May 12, 2017, Mr. Moskowitz contacted Mr. Selnick by email, copying Mr. Sherman and Mr. Perlmutter, to recommend that four experts be added to the upcoming call with Apple. Mr. Selnick responded that the Council's recommendation "[s]ounds great."[80] On May 18, 2017, the Mar-a-Lago Council, represented by Mr. Moskowitz and Mr. Sherman, held a 30-minute conference call with Mr. Selnick to discuss the Apple engagement and the mobile app project.[81] The Mar-a-Lago Council held another call with Mr. Selnick on May 23, 2017. The Council was represented by Mr. Moskowitz and Mr. Sherman, and individuals from Apple also joined to receive further guidance in preparation for "the upcoming VA/Centers/Apple call."[82]

53.     On May 22, 2017, in response to the Council's recommendations, Mr. Selnick sent the Mar-a-Lago Council written comments from the VA Office of Information and Technology ("VA OIT"). VA OIT reacted favorably to recommendations the Council had earlier provided regarding what kinds of features should be included in a mobile application.[83] Indeed, VA OIT noted that it was "impressed" with the app that Mr. Moskowitz had brought to the VA's attention through the Mar-a-Lago Council's work, and expressed "interest[] in speaking with the

---

[79] *See id.* at 234 (final Digital Veteran Platform background document, attached to agenda for the June 14, 2017 meeting).

[80] *Id.* at 55.

[81] *Id.* at 56, 63.

[82] *Id.* at 130, 155-157.

[83] *Compare id.* at 111-112 *with id.* at 130-135.

developers involved with the application" in order "[t]o move forward rapidly."[84] Specifically with regard to a Council recommendation that a mobile app should include "a technology solution for tracking medication compliance, prevention of over utilization of controlled substances and prevention of medication errors" the VA OIT noted that "VA understands this is doable now and is interested in supporting the team that Dr. Moskowitz has identified to develop this solution . . . . We are looking forward to working with the Centers to rapidly employ this solution."[85]

54.      VA OIT noted at this point that it was also reviewing "2-3 other commercial applications with features required for this effort" and that this review would take "a couple of weeks" to complete.[86] But by May 23, 2017—well before OIT's review period was supposed to conclude—the VA had decided to "utilize[e] the native iOS mobile app, Emergency Medical Center Tracker, that Dr. Moskowitz developed" even though VA OIT had determined that "some of the code needs to be refactored and even rebuilt" and that the Moskowitz "app will need to be scaled very quickly."[87] The process by which Mr. Moskowitz's proprietary application was selected has been obscured from public view, though it is clear that Mr. Moskowitz was in direct contact with then-Secretary Shulkin during the time when the VA decided to move forward on the portion of the project that would adapt from the application developed by Mr. Moskowitz.[88]

---

[84] *Id.* at 133.

[85] *Id.* at 134.

[86] *Id.* at 133.

[87] *Id.* at 158-159.

[88] *See id.*

Mr. Selnick concludes from this process that Mr. Moskowitz is "the implementer for VA" on the mobile application development.[89]

55.     To expedite things in advance of the June 14, 2017 meeting with Apple and the five academic centers working on developing the mobile app, Mr. Selnick reached out to Mr. Moskowitz on May 25, 2017 to solicit the Council's views on what tasks VA OIT could begin working with Apple on.[90] Mr. Selnick subsequently connected the Mar-a-Lago Council with the Veterans Health Administration officials who would be responsible for implementing the mobile app concept recommended by the Council.[91]

56.     The Mar-a-Lago Council was given a significant role in the development of the mobile app, including organizing the various stakeholder meetings necessary to move the project forward and sitting, together, on the project's "executive committee," along with then-Secretary Shulkin.[92] Yet the VA also made clear that the Mar-a-Lago Council served at the direction of the Department. Notably, on June 26, 2017, Mr. Selnick emailed Mr. Moskowitz to ensure the Council understood that "the VA responsibility to provide the overall responsibility to manage and provide oversight for the VA/Apple/Cener partnership" belonged to Mr. Selnick so the Council's work on the mobile application would necessarily need to flow through the VA's designated project leads.[93]

57.     As discussed above, much of this work culminated in an hour-and-a-half call led by the Mar-a-Lago Council on June 14, 2017. Council participants included Mr. Perlmutter, Mr.

---

[89] *Id.*

[90] *Id.* at 158.

[91] *Id.* at 173.

[92] *Id.* at 253.

[93] *See id.* at 252.

Sherman, and Mr. Moskowitz. Also on the call were then-Secretary Shulkin and senior officials at the VA, including the Secretary of Veterans Affairs, the Acting Under Secretary for Health, a Senior Advisor to the Secretary, the Acting Assistant Secretary & Chief Information Officer, a Senior Advisor to the Acting Under Secretary for Health; executives from Apple, including its CEO and COO, among others; and experts from five academic healthcare centers, including the Mayo Clinic, Johns Hopkins University, Brigham Health, Connected Health and Partners Health Care, Biomedical Research & Education Foundation, Kaiser Permanente, the Cleveland Clinic, and Mount Sinai Health System. The meeting covered numerous discrete topics but broadly focused on the VA's electronic health and medical records modernization effort, including its plan to build a mobile app with the assistance of Apple.[94]

58.     After the call, VA officials reported back to the Council to update it on the VA's progress. In one email, Camilo Sandoval, now the acting Chief Information Officer for the Department, told the Council, "I will update the tracker, and please do let me know if this helps answers [sic] questions around Apple's efforts or if additional clarification is required."[95] Mr. Sandoval's consultation with the Council came at the direction of John Windom, then the Director of the Electronic Health Records Modernization Program Executive Office.[96]

59.     Council member Bruce Moskowitz also brought his son Aaron Moskowitz on to advise the VA on the mobile app effort.[97] On information and belief, the Council described Aaron Moskowitz as a "mid-level . . . manager" of the project.[98]

---

[94] VA Senior Leadership Emails, *supra* note 8, CalendarsDJSwBMIPMSRedacted at 39-47; ProPublica Documents, *supra* note 17, at DS Perlmutter-6-Att-6_Redacted.

[95] VA Senior Leadership Emails, *supra* note 8, PORemailsto5318Redacted at 28.

[96] *Id.*

[97] Arnsdorf, *supra* note 9.

60.     Ultimately, the Mar-a-Lago Council came to feel like their work on the mobile app had yielded a plan "that would have solved many of the problems faced by the choice system, Telemedicine and of equal importance a platform for mental health."[99] But they expressed frustration at the VA's slow progress in implementing the Mar-a-Lago Council's recommendations. Eager to incorporate the Council's advice and recommendations, then-Chief of Staff O'Rourke responded to the Council's frustrations by asking "What can I do to salvage that group's work and expertise and apply what we can to the developing product?" The Mar-a-Lago Council decided that a conference call meeting would be required "to rescue this very important initiative."[100]

### D.     Medical device registry

61.     On June 4, 2018, at the recommendation of Council members, the VA organized a summit of experts on medical device registries with the goal of building a national registry that notified patients of medical device product recalls.[101] Council members joined Department officials on more than a dozen weekly conference calls to discuss organizing the "Medical Device Registry Summit" and making a public commitment to build a registry at the VA.[102] During his remarks at the summit, then-acting Secretary O'Rourke thanked Council member Mr. Moskowitz for being one of the "driving forces" behind the initiative.[103]

---

[98] Isaac Arnsdorf, *VA Shadow Rulers Had Sway Over Contracting and Budgeting*, ProPublica, Dec. 3, 2018, https://www.propublica.org/article/va-shadow-rulers-had-sway-over-contracting-and-budgeting/amp.

[99] VA Senior Leadership Emails, *supra* note 8, PORemailsto5318Redacted at 27-28.

[100] *Id.* at 27.

[101] *See generally* VA Senior Leadership Emails, *supra* note 8, Emails JHB to 6-22-18.1 Redacted.

[102] *Id.*; *see, e.g.*, *id.* at 3 (describing a "weekly call" to discuss "developing a Medical Device Registry, in collaboration with Bruce Moskowitz and his colleagues").

[103] VA Senior Leadership Emails, *supra* note 8, EmailsJHBto622181Redacted at 242.

62.     Leading up to the summit, SreyRam Kuy, a Senior Advisor to the VA Secretary charged with organizing the summit, requested a meeting with then-Secretary Shulkin to provide an "update on the Medical Device Registry Summit/Bruce Moskowitz efforts."[104] As part of this effort, the Mar-a-Lago Council also took steps to initiate a device registry pilot project. On March 28, 2018, Mr. Moskowitz wrote to then-Chief of Staff O'Rourke to confirm that "all of the essentials are done and ready to go including the barcoding, scanners and [electronic medical record] configuration. The extraction of data from having a registry has been vetted also. Starting a pilot project will allow us to get the 'kinks out'. We firmly believe there will be no cost to the VA but huge savings on inventory management."[105]

63.     The Mar-a-Lago Council has a personal interest in the medical device registry project. Mr. Moskowitz started a foundation called the Biomedical Research and Education Foundation, which has lobbied medical institutions to start device registries.[106] Mr. Perlmutter's wife served on the organization's Board of Directors.[107]

### E.     Cerner contract

64.     According to four former and current senior VA officials, Council members played a significant role in advising the VA's transformation of its digital records system, the biggest health information technology project in history.[108] In June 2017, then-Secretary Shulkin awarded a major contract for work related to the overhaul to Cerner Corp. However, due to the Council's concerns with the company, the agreement was delayed for months.[109] During that

---

[104] ProPublica Documents, *supra* note 17, at DS-Moskowitz-7-1-Redacted.

[105] VA Senior Leadership Emails, *supra* note 8, PORemailsto5318Redacted at 19.

[106] Arnsdorf, *supra* note 9.

[107] *Id.*

[108] Allen, *supra* note 51.

[109] *Id.*

time, a team of investigators from the VA OIT were tasked with evaluating Council member concerns and were even directed to look into the Cerner system Mr. Moskowitz used in his personal business.[110]

65. On January 5, 2018, then-Secretary Shulkin met with officials from the United States Department of Health and Human Services and private sector interoperability experts to discuss interoperability as it relates to the Cerner contract. The meeting was held at the MITRE Corporation's headquarters in McLean, Virginia. The expert list included individuals from the Mayo Clinic, HMMS, Leavitt Partners, LLC, the University of Washington, American College of Surgeons, Boston Children's Hospital, and Massachusetts General Hospital. The Mar-a-Lago Council did not attend this meeting, but at least two of the experts were included at their recommendation.[111]

66. The Council's involvement in the Cerner project was so pervasive that on February 27, 2018, then-Secretary Shulkin flew to Mar-a-Lago for the purpose of meeting with Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman to "close the deal on the Cerner contract."[112] Prior to the meeting, then-Secretary Shulkin specifically invited the Council to weigh in on technical concepts concerning the mobile app and how that project related to the Cerner contract.[113] On information and belief, at their February 27, 2018 meeting, then-Secretary Shulkin and the Council discussed recommendations that came from the January 5, 2018 meeting at MITRE described above.

---

[110] *Id.*

[111] VA Senior Leadership Emails, *supra* note 8, CalendarsDJSwBMIPMSRedacted at 72-73.

[112] Arnsdorf, *supra* note 9.

[113] *See* VA Senior Leadership Emails, *supra* note 8, DJSEmailsRedacted at 56-58.

67.     On March 13, 2018, the Mar-a-Lago Council members were asked by then-acting Chief Information Officer Scott Blackburn to sign non-disclosure agreements so that they could "lend an extra set of outside eyes on the [Cerner] contract."[114] Addressing the Council members collectively, Mr. Blackburn further proposed a call to "orient you to the contract and help focus you on the parts where your expertise will be most valuable."[115] The Council had earlier provided advice to then-Secretary Shulkin on which outside interoperability experts the VA should recruit and the means by which those individuals could be brought on board.[116] That sort of advice was thought to be critical to senior VA officials working on the Cerner contract. As described by Mr. Sandoval, "it was a team of top medical CIOs and practitioners—put together by Ike Perlmutter and Bruce Moskowitz—who identified the flaws in the [Cerner] contract and made the recommendations, not MITRE."[117] That is, the process run by the Mar-a-Lago Council produced a view on the Cerner contract that was ultimately utilized by the VA.

### F.     VA privatization

68.     The Council has advised the VA to privatize essential healthcare services the VA provides to veterans. For example, in an email to then-Secretary Shulkin and other VA officials on September 18, 2017, the Council said,

> We have been talking to Dr. Shulkin for many months about identifying the existence of healthcare delivery issues at VA medical centers . . . . As an example, we think that some of the VA hospitals are delivering some specialty healthcare when they shouldn't and when referrals to private facilities or other VA centers would be a better option. Not every VA hospital has both the breadth and depth of specialized medical expertise in every specialty, which then creates risk to the patients and the system. One idea discussed was to institute a self-rating program, but self-ratings are rarely of any practical use. Our

---

[114] VA Senior Leadership Emails, *supra* note 8, EmailsPORto62218Redacted at 26; *see id.* at 26-40.

[115] *Id.* at 26.

[116] VA Senior Leadership Emails, *supra* note 8, DJSemailsRedacted at 84-85

[117] VA Senior Leadership Emails, *supra* note 8, EmailsPORto62218Redacted at 24.

solution is to make use of the academic medical centers and medical trade groups, both of whom have offered to send review teams to the VA hospitals to help in this effort. The purpose of this email is to see if you know of any impediments to taking them up on this offer and to get your thoughts in general about this approach.[118]

69.    On September 24, 2017, then-Secretary Shulkin responded to the Council

recommendation, saying,

I agree with Ike and the team that measuring VA against private hospitals is critical—so while [the Centers for Medicare and Medicaid Services] is not able to deliver this for months we have now developed our own tool to do this—we are fine tuning the model this week and can share it by [F]riday. If it does not get us where we need to be then working quickly with an independent group would make a great deal of sense.[119]

### G.    Evaluation of VA surgery programs

70.    At the Council's recommendation, the VA developed a plan for the American

College of Surgeons to evaluate the surgery programs at several VA hospitals. In December

2017, after discussing the idea with then-Secretary Shulkin, Mr. Sherman reported back to

Michael Zinner, a member of the American College of Surgeons' board of regents. In an email

sent by Mr. Sherman to Mr. Zinner on December 6, 2017, Mr. Sherman said, "[The VA

Secretary] is ready to kick it off and is standing by for me to set up a call with you, David Hoyt,

me and him to do so."[120] After Mr. Zimmer assured Mr. Sherman that he would "get working on

this call," Mr. Sherman added several individuals to the email chain, including Mr. Perlmutter

and Mr. Moskowitz. When adding the Council members, Mr. Sherman explained that he was

"including my gang as a cc."[121] On February 14, 2018, then-Secretary Shulkin emailed a

progress update on the project to at least two Council members, telling the Council, "We're

---

[118] ProPublica Documents, *supra* note 17, at DS-Moskowitz-5-4_Redacted.

[119] *Id.*

[120] *Id.* at DS-Sherman-10-7_Redacted.

[121] *Id.*

getting close."[122] A conference call between the American College of Surgeons and Mr. Moskowitz, organized by then-Secretary Shulkin, was scheduled for the following day, February 15, 2017.[123] Several months later, on March 7, 2018, then-Secretary Shulkin advised his staff to set up a conference call with the American College of Surgeons to develop a contract for the work, telling him he wanted the project "to start asap."[124] By March 27, 2018, a plan was in place to have the American College of Surgeons conduct site visits. Then-Secretary Shulkin requested the Mar-a-Lago Council's "feedback or suggestions" on the plan.[125]

## H. Tracking human tissue devices

71.     On January 19, 2018, then-Secretary Shulkin and at least five other senior VA officials attended a meeting with the American Association of Tissue Banks ("AATB") and the AATB Tissue Policy Group. Following the meeting, the organizations sent then-Secretary Shulkin a proposal to "partner with the VA" in developing "the development of appropriate systems for tracking and tracing all devices, including human tissue devices."[126] On February 2, 2018, then-Secretary Shulkin forwarded the proposal to Council member Mr. Moskowitz for the Council's recommendation, saying "Bruce - what do you think of this?" Mr. Moskowitz responded with a recommendation, to which then-Secretary Shulkin stated, "Ok."[127]

## I. Mental health

72.     The Council provided input on the development of a mental health initiative at the VA. Specifically, the Council directed that the VA should make veterans mental health the first

---

[122] *Id.* at DocumentsReport2018-07-09-11.

[123] VA Senior Leadership Emails, *supra* note 8, CalendarsDJSwBMIPMSRedacted at 1.

[124] ProPublica Documents, *supra* note 17, DocumentsReport2018-07-09-11.

[125] VA Senior Leadership Emails, *supra* note 8, DJSEmailsRedacted at 1.

[126] ProPublica Documents, *supra* note 17, DocumentsReport2018-07-09-11.

[127] *Id.*

priority, and that the Department should work with certain academic partners selected by the Mar-a-Lago Council in doing so. The Mar-a-Lago Council further instructed that this group should have a "direct working relationship" with key component programs within the VA, and also that they be permitted "the authority to seep away any beuqacratic [sic] process that slows the initiative."[128] On February 28, 2018, then Chief of Staff O'Rourke responded to the Council's recommendations related to the new initiative, saying, "Received. I will begin a project plan and develop a timeline for action."[129]

### J. Firing of David Shulkin

73.     Just as Mr. Shulkin's tenure at the helm of the VA began, in part, on the recommendation of the Mar-a-Lago Council, it likewise came to an end once Mr. Shulkin fell out of favor with the Council. According to three former Trump Administration officials, while several factors contributed to Mr. Shulkin's firing, it was his friction with the Mar-a-Lago Council over the Cerner contract that ultimately led to President Trump's decision to remove the VA Secretary. On December 4, 2017, Jake Leinenkugel, the White House Senior Advisor on veterans affairs, sent a memo to a political appointee within the Department outlining "key items that need to be addressed within the VA Leadership structure."[130] Among the items Mr. Leinenkugel highlighted were to "[p]ut [Shulkin] on notice to exit" and "*[u]tilize outside team (Ike)*" when considering options for replacing him.[131]

---

[128] VA Senior Leadership Emails, *supra* note 8, PORemailsto5318Redacted at 36-37.

[129] ProPublica Documents, *supra* note 17, at Responsive-Docs_Redacted..

[130] Email from Jake Leinenkugel to Camilo J. Sandoval (Dec. 4, 2017), https://assets.documentcloud.org/documents/4614204/Leinenkugel-Sandoval-Memo.pdf.

[131] Arnsdorf, *supra* note 9 (emphasis added) (second alteration in the original).

## III.    The Mar-a-Lago Council Operates Collectively, as a Committee

74.    In addition to its actions, the Council's own words, and the words of Trump Administration officials, show that in holding the meetings and making the recommendations detailed above, the Council operated collectively, as a group.

  a.  When Mr. Sherman was unable to participate in a Council meeting on February 23, 2017, Mr. Moskowitz assured Council members that he would "update [Mr. Sherman] after the call."[132]

  b.  In a May 11, 2017 email, Mr. Moskowitz referred to the Council as his "group," noting that the Council was working together on agenda items for an upcoming meeting.[133]

  c.  On September 7, 2017, Mr. Perlmutter sent an email to then-Secretary Shulkin regarding a story he had been told about a veteran having trouble accessing military records. With other Council members copied on the email, Mr. Perlmutter stated, "we are making very good progress, but this is an excellent reminder that we are still very far away from achieving our goals."[134]

  d.  On September 24, 2017, then-Secretary Shulkin responded to a Council recommendation saying, "I agree with Ike and the team that measuring VA against private hospitals is critical."[135] "Ike" refers to Mr. Perlmutter; "the team" refers to the Council.

---

[132] ProPublica Documents, *supra* note 17, at DS Sherman 2-3.

[133] VA Senior Leadership Emails, *supra* note 8, DSTBCSto62218Redacted at 50.

[134] ProPublica Documents, *supra* note 17, at DocumentsReport2018-07-09-11-53-56_Redacted[2].

[135] *Id.* at DS-Moskowitz-5-4_Redacted.

e.  On October 22, 2017, Mr. Perlmutter sent an email congratulating then-Secretary Shulkin for his interview on Fox News. With other Council members copied on the email, Mr. Perlmutter stated, "That interview really did a great service to what you (and we) are doing to improve the quality of care for our veterans for the long term."[136]

f.  On February 14, 2018, then-Secretary Shulkin emailed the Council to update members on progress regarding the implementation of a Council recommendation. Mr. Shulkin said, "We're getting close."[137]

g.  On February 24, 2018, then-Secretary Shulkin emailed Mr. Moskowitz to forward a data-sharing proposal the Department received from several major hospitals. Mr. Moskowitz replied to Mr. Shulkin, promising to "discuss with everyone."[138]

h.  On February 28, 2018, shortly after Mr. O'Rourke became Chief of Staff, he emailed the Council—Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz—saying, "Thank you for your support of the President, the VA, and me as we work to make the VA great." Mr. O'Rourke also agreed to the terms of the Mar-a-Lago Council's secret involvement, promising to "protect our conversations from yesterday and as instructed by the Secretary last night, not discuss the content with any individuals what were mentioned."[139] The Council replied to the email and shared contact information for Council

---

[136] *Id.* at DocumentsReport2018-07-09_11-53-56_Redacted[2].

[137] *Id.*

[138] *Id.*

[139] VA Senior Leadership Emails, *supra* note 8, POR emails to 5-3-18 Redacted at 32.

members with Mr. O'Rourke, saying "please feel free to contact any of us at anytime . . . look forward to achieving the goals discussed."[140]

i.  On February 28, 2018, Mr. Sherman responded to Mr. O'Rourke's e-mail, stating, "We are always excited to provide each of our thoughts to you and the Secretary as you both more forward in making decisions on how to best run and improve the veterans healthcare delivery system."[141]

j.  On March 13, 2018, in negotiating the non-disclosure agreement that would permit the Council to weigh in on the Cerner contract, Mr. Sherman edited the agreement specifically to permit Council members to discuss the contract with each other.[142]

k.  On April 21, 2018, in an email to then-acting Secretary Wilkie following the April 20 in-person meeting between the Mar-a-Lago Council and Mr. Wilkie, Mr. Moskowitz stated, "I am sure that I speak for the group, that both you and Peter [O'Rourke] astounded all of us on how quickly and accurately you assessed the key problems and more importantly the solutions that will be needed to finally move the VA in the right direction."[143]

l.  In response, Mr. Wilkie indicated that he intended the relationship with the Mar-a-Lago Council to be an ongoing one: "Sir it was my honor. Thank you for taking time and I look forward to seeing you soon."[144]

---

[140] *Id.*

[141] ProPublica Documents, *supra* note 17, at Responsive-Docs_Redacted.

[142] VA Senior Leadership Emails, *supra* note 8, EmailsPORto62218Redacted at 35.

[143] ProPublica Documents, *supra* note 17, RE_[EXTERNAL] Meeting follow up_Redacted.

[144] VA Senior Leadership Emails, *supra* note 8, RLW Emails up to 6-5-18 Redacted at 2.

m.  Also on April 21, Mr. Perlmutter wrote "for all of" the Mar-a-Lago Council members to "say our meeting was extremely productive. For the first time in 1 1/2 years we feel everyone is on the same page. Everyone 'gets it.' . . . Again, please know we are available and want to help any possible way 24/7."[145]

n.  The reply email from Mr. Wilkie to the Mar-a-Lago Council expressed how he "was honored to visit with" the Council, and indicated his intention to utilize their input in forthcoming efforts to modernize the VA: "No matter how long I am here, *there is a template in place based on your efforts to move this institution out of the Industrial Age*."[146]

o.  Finally, in a statement issued jointly over July 18-20, 2018, Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman detailed the Mar-a-Lago Council's influence and activities. The joint statement is worth quoting at length (below). The statement's use of collective pronouns (*e.g.*, "we," "our"), without exception, and its descriptions of how the Council set about its business, underscore what the above lists of actions and statements make clear: that the Council operated as an advisory committee.

**Statement by Ike Perlmutter, Bruce Moskowitz and Marc Sherman**

The three of us come from very different backgrounds, but we have long shared a deep concern for the health of our veterans. When we saw an opportunity to assist the Department of Veterans Affairs's leadership in addressing some of the most intractable problems of the VA, we considered it an honor and a privilege to do so. After the President's election, we saw an opportunity to share our expertise in organizational management and our personal relationships with healthcare experts around the country to assist the VA as it undertook an aggressive reform of its healthcare delivery and systems. We offered our counsel, and the advice of these

---

[145] *Id.*

[146] *Id.* at 1 (emphasis added).

healthcare experts, to assist the President, Secretary and VA leadership in their making the essential decisions—sometimes life or death—that affect our nation's veterans. At all times, we offered our help and advice on a voluntary basis, seeking nothing at all in return.

It was Mr. Perlmutter's personal relationship with the President that allowed us the opportunity to be of service. Since late 2016, we have shared our views and perspectives on a number of occasions with VA leadership. For the most part, those interactions were either to facilitate introductions to subject matter healthcare and technology experts with whom we had relationships, or to discuss healthcare delivery and healthcare quality challenges facing the agency and therefore affecting our veterans. While we were always willing to share our thoughts, we did not make or implement any type of policy, possess any authority over agency decisions, or direct government officials to take any actions. That was not our role, and we were at all times very well aware of that. We provided our advice and suggestions so that members of the Administration could consider them as they wished to make their own decisions on actions to be taken. To the extent anyone thought our role was anything other than that, we don't believe it was the result of anything we said or did.

At no time was our volunteer assistance a secret. We were on emails and conference calls with senior staff, and Secretary Shulkin referred on numerous occasions to his discussions with outside experts. He specifically mentioned one or more of us at public events covered by the media. We were also present at a post-meeting White House press gaggle on VA-related issues. We are proud of any contribution we have been able to make to improve the healthcare provided to the fine men and women who are served by the VA. None of us has gained any financial benefit from this volunteer effort, nor was that ever a consideration for us. The only benefit we gained was the satisfaction of helping America's veterans get the very best healthcare possible, in the most efficient and effective manner.

Since late 2016, we have shared our views and perspectives on various issues on a number of occasions with VA leadership. For the most part, those interactions were either to facilitate introductions to subject matter healthcare and technology experts with whom we had relationships, or to discuss healthcare delivery and healthcare quality challenges facing the agency that affected America's veterans. . . . [147]

## DEFENDANTS ARE VIOLATING THE FACA AND HARMING PLAINTIFF

75.     As detailed above, the Mar-a-Lago Council is an advisory committee under the

FACA. The Council has an organized structure, a fixed membership, and a specific purpose. The

---

[147] Mar-a-Lago Council Statement, *supra* note 1.

Council is comprised of at least three members—Mr. Perlmutter, Mr. Moskowitz, and Mr. Sherman—who, under Mr. Perlmutter's leadership, make recommendations and provide advice to the Department and other federal officials. The Council's aim is to influence how the Department carries out its mission with respect to an ever-growing number of discrete goals and projects.

76. Nonetheless, Defendants and the Council have not complied with the FACA's requirements. The Council lacks a charter. Defendants have not published notice of the Council's meetings, and thereby have thwarted any attempts by Plaintiff and others to participate in those meetings. Defendants have not made public the materials provided to or generated by the Council. And Defendants and the Council have not kept minutes of the Council's meetings, all in violation of the FACA, and with harmful effects on Plaintiff and others.

77. Plaintiff VoteVets has a distinct interest in the Administration's policies towards veterans, and in its efforts to privatize healthcare services for veterans in particular. VoteVets believes the VA healthcare system should not, and must not, be privatized. On April 4, 2018, VoteVets issued a statement criticizing the Administration's attempts to transfer the healthcare "system relied on by millions of American veterans into the hands of for-profit health groups." On March 5, 2018, in an effort to access information related to the Administration's privatization efforts, VoteVets submitted a Freedom of Information Act request to the VA. As relevant here, Plaintiff's FOIA request sought records related to the role private individuals and pro-privatization advocacy groups have played in influencing the Administration's VA healthcare policy. In particular, the request sought communications from the Department related to President Trump's firing of then-Secretary Shulkin and whether Mr. Shulkin's opposition to VA privatization efforts contributed to his termination. The Department failed to adequately respond

to Plaintiff's FOIA request. As a result, VoteVets was forced to file suit on April 4, 2018, to obtain the requested information. In addition, VoteVets has specifically requested that, as required by the FACA, the VA disclose materials that have been made available to or prepared for or by the Mar-a-Lago Council. The VA has not responded to VoteVets's request.

78.     VoteVets works to counter VA privatization efforts in a number of other ways as well. VoteVets educates its supporters via email and social media about the issue and the Administration's privatization plans. VoteVets advocates at the federal level for laws and policies that support and strengthen the continuation of a public VA healthcare system. VoteVets also expends significant resources educating the broader public about the dangers of VA privatization. For example, on September 14, 2017, VoteVets announced a $400,000 advertising campaign across thirteen states to mobilize Americans to oppose the Administration's privatization efforts.

79.     Given VoteVets' dedication to improving veterans policy and advocacy against the privatization of VA services—and therefore, its keen interest in understanding and uncovering the Mar-a-Lago Council's activities, and desire to take part in the Council's business—Defendants' violation of the FACA has harmed and will harm VoteVets in at least two ways. First, by violating the public records requirements of the FACA, Defendants have denied VoteVets its statutory right to review the Mar-a-Lago Council's documents and meeting minutes. Second, by violating the requirements of FACA, Defendants have deprived VoteVets of its statutory right to participate in the Mar-a-Lago Council's meetings and represent its views to the Council regarding, among other issues, the privatization of VA services. Accordingly, VoteVets has informational standing to challenge Defendants' violation of the FACA.

# CLAIM FOR RELIEF

## Count One
### (Violation of the FACA and the APA)

80.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

81.     The Mar-a-Lago Council is an advisory committee within the meaning of the FACA because it is a "council . . . which is established or utilized by" Defendant the VA "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. app. 2 § 3(2).

82.     By failing to file a charter for the Council, Defendants and the Council failed to comply with the FACA's non-discretionary requirement under 5 U.S.C. app. 2 § 9(c). Therefore, under the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id*. § 706(2)(A).

83.     By failing to publish notice of Council meetings in the Federal Register and by failing to allow interested parties to attend those meetings, Defendants and the Council are failing to comply with the FACA's non-discretionary requirements under 5 U.S.C. app. 2 § 10(a)(1)-(3). Therefore, under the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id*. § 706(2)(A).

84.     By failing to make available "the records reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the Council, Defendants and the Council are failing to comply with the FACA's non-discretionary requirements under 5 U.S.C. app. 2 § 10(b). Therefore, under the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id*. § 706(2)(A).

85.     By failing to "ke[ep]" "[d]etailed minutes" of all Council meetings, Defendants and the Council are failing to comply with the FACA's non-discretionary requirements under 5 U.S.C. app. 2 § 10(c). Therefore, under the APA, Defendants have unlawfully withheld or unreasonably delayed agency action, 5 U.S.C. § 706(1), and acted contrary to law, *id.* § 706(2)(A).

86.     Defendants' failure to comply with the FACA in relation to the Mar-a-Lago Council is "final agency action for which there is no other adequate remedy in a court," and therefore is "subject to judicial review." *Id.* § 704; *see id.* § 702.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1.     declare that Defendants' creation and administration of the Mar-a-Lago Council violates the FACA and the APA, and that the Council is therefore unlawful;

2.     enjoin Defendants from utilizing the Mar-a-Lago Council as an advisory committee unless and until Defendants and the Council comply with the FACA;

3.     through the named Defendants, enjoin the Mar-a-Lago Council from meeting, advising Defendants, and otherwise conducting Council business unless and until Defendants and the Council comply with the FACA;

4.     order Defendants to file a charter for the Council;

5.     order Defendants to publish notice of the Council's meetings in the Federal Register;

6.     order Defendants to permit public participation at the Council's meetings;

7.     order Defendants to ensure that detailed minutes of the Council's meetings are kept;

8.      order Defendants to provide to Plaintiff a full and complete copy of all records,

reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other

documents that have been made available to, or prepared for or by, the Council;

9.      award Plaintiff its costs, attorneys' fees, and other disbursements for this action;

and

10.     grant any other relief this Court deems appropriate.

Dated:  December 6, 2018                    Respectfully submitted,

                                            /s/ Adam Grogg
                                            Adam Grogg (D.C. Bar No. 1552438)
                                            Karianne M. Jones (D.C. Bar No. 187783)
                                            Javier M. Guzman (D.C. Bar No. 462679)
                                            Democracy Forward Foundation
                                            1333 H St. NW
                                            Washington, DC  20005
                                            (202) 448-9090
                                            agrogg@democracyforward.org
                                            kjones@democracyforward.org
                                            jguzman@democracyforward.org

                                            *Counsel for Plaintiff*